1   MORGAN, LEWIS & BOCKIUS LLP
    Kevin M. Papay, Bar No. 274161
2   kevin.papay@morganlewis.com
    One Market, Spear Street Tower
3   San Francisco, CA  94105-1596
    Tel:    +1.415.442.1000
4   Fax:    +1.415.442.1001

5   Attorneys for Petitioner
    RIVER FINANCIAL INC.
6

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  RIVER FINANCIAL INC., a Delaware       Case No. 3:25-mc-80072-LB
    corporation,
12                                         **PROOF OF SERVICE**
                        Petitioner,
13
                  v.
14
    JONATHAN ZHOU, an individual,
15
                        Respondent.
16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  SAN FRANCISCO

1

## PROOF OF SERVICE

2

*River Financial Inc. v. Jonathan Zhou*
United States District Court Northern District of California
Case No. 3:25-mc-80072-LB

3

4

I declare I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within entitled action. My business address is One Market, Spear Street Tower, San Francisco, CA 94105-1596.

5

6

On March 21, 2025, I served a copy of the within document(s):

7

**CLAIMANT RIVER FINANCIAL INC.'S NOTICE OF PETITION AND PETITION TO CONFIRM ARBITRATION AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;**

8

9

**DECLARATION OF WILLIAM MONGAN IN SUPPORT OF CLAIMANT RIVER FINANCIAL INC'S PETITION TO CONFIRM ARBITRATION AWARD, EXHIBITS 1-5**

10

11

[x]    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at San Francisco, California addressed as set forth below.

12

13

[x]    by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

14

15

**Jonathan Zhou**
**689 Brunswick Street**
**San Francisco, CA 94112**
**Jonathanjzhou676@gmail.com**

16

17

18

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

19

20

21

Executed on March 21, 2025, at San Francisco, California.

22

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

23

24

_____

25

Paula R. Lesure

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PROOF OF SERVICE

MORGAN, LEWIS & BOCKIUS LLP
Kevin M. Papay, Bar No. 274161
kevin.papay@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel:     +1.415.442.1000
Fax:     +1.415.442.1001

Attorneys for Petitioner
RIVER FINANCIAL INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIVER FINANCIAL INC., a Delaware corporation, | Case No. |
| Petitioner, | **CLAIMANT RIVER FINANCIAL INC.'S NOTICE OF PETITION AND PETITION TO CONFIRM ARBITRATION AWARD; MEMORANDUM OF POINTS AND AUTHORITIES THEREOF** |
| v. | |
| JONATHAN ZHOU, an individual, | |
| Respondent. | |

**TO RESPONDENT AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** as soon as the matter may be heard, Petitioner River Financial Inc. ("River") will and hereby does petition this Court for an order pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, confirming the award of arbitrator Hon. Robert A. Baines (Ret.), entered on October 18, 2024 ("Award"), with respect to River's claim against Respondent Jonathan Zhou.

This Petition is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of William Mongan in support of the Petition and exhibits attached thereto, and on all oral and documentary evidence as may be presented at or before the time of the hearing on this Petition.

Dated: March 19, 2025

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By   _/s/ Kevin M. Papay_
Kevin M. Papay

Attorneys for Petitioner
River Financial Inc.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

NOTICE OF PETITION AND PETITION TO
CONFIRM ARBITRATION AWARD

**MEMORANDUM OF POINTS AND AUTHORITIES**

1.      Petitioner River Financial Inc. hereby moves to confirm the arbitration award against Respondent Jonathan Zhou ("Respondent," together with River Financial Inc., the "Parties") in the amount of $190,000.00 for breaching the Parties' agreement by initiating fraudulent purchases of Bitcoin.

## II.    PARTIES

2.      Petitioner River Financial Inc. ("River") is a corporation organized under the laws of the State of Delaware and headquartered in Columbus, Ohio.

3.      Respondent Jonathan Zhou is an individual who resides and is domiciled in San Francisco, California.

## III.   JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states—Petitioner is a citizen of Delaware and Ohio, and Respondent is a citizen of California—and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      Venue is proper in this judicial district because as described below, the Parties consented to the venue and personal jurisdiction of the federal courts located in San Francisco, California.  *See* accompanying Declaration of William Mongan ("Mongan Decl."), Ex. 1 (Terms of Service) at 18 [§ 11.6].  Moreover, venue is proper in this judicial district pursuant to 9 U.S.C. § 9 because this is the district court in and for the jurisdiction in which the arbitration award was made.

## IV.   BACKGROUND

6.      On or about February 2, 2024, River and Respondent entered into an agreement known as the River Terms of Service ("Agreement") under which Respondent created an account to buy and sell Bitcoins.  *See* Mongan Decl. ¶ 2, Ex. 1 (Terms of Service).  Section 11.3 of the Agreement contains the Parties' agreement to arbitrate through JAMS.  *See* Mongan Decl., Ex. 1 (Terms of Service) at 17.  Pursuant to the Agreement, Respondent purchased Bitcoins worth $190,000.00 from River in February and March of 2024.  *See* Mongan Decl., Ex. 5 (Final Award)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

NOTICE OF PETITION AND PETITION TO
CONFIRM ARBITRATION AWARD

at 4. River delivered the Bitcoins to Respondent, but did not receive payment. *See* Mongan Decl., Ex. 5 (Final Award) at 4.

7. On April 9, 2024, River made a written demand for payment for the Bitcoins delivered to Respondent. *See* Mongan Decl. ¶ 3, Ex. 2 (Demand Letter). After receiving no reply, River made a demand for arbitration on April 22, 2024. *See* Mongan Decl. ¶ 4, Ex. 3 (Demand for Arbitration). JAMS received the demand for arbitration on or about May 8, 2024. *See* Mongan Decl., Ex. 5 (Final Award) at 3. The Hon. Robert A. Baines (Ret.) (the "Arbitrator") was appointed as the sole arbitrator for the claim, and an initial arbitration management conference was held on September 5, 2024. *See* Mongan Decl., Ex. 4 (Pre-Hearing Order No. 1) at 2-3. Per the pre-hearing order, both parties were required to exchange information. *Id.* Respondent did not attend the initial management conference or participate in the exchange of information. *See* Mongan Decl. ¶ 6, Ex. 5 (Final Award) at 3. All parties were given over thirty (30) days written notice of the arbitration hearing. *See* Mongan Decl., Ex. 5 (Final Award) at 3.

8. The arbitration hearing occurred on October 18, 2024. *Id.* The Arbitrator applied Delaware substantive law pursuant to Section 11.5 of the Parties' Agreement. *Id.* Although Respondent did not appear or otherwise participate in the arbitration hearing, River established a prima facie claim through testimonial and documentary evidence. *Id.* at 3-4.

9. Based on the uncontroverted evidence, the Arbitrator concluded that Respondent breached the Parties' Agreement by not paying for the Bitcoins he purchased and received from River, resulting in River's loss of $190,000.00. *Id.* at 5. The Arbitrator entered a final award in favor of River in the amount of $190,000.00. *Id.*

**V.    THIS COURT SHOULD CONFIRM THE ARBITRATION AWARD.**

10. The arbitration agreement contained within the Agreement is valid and enforceable. *See Cheng v. PayPal, Inc.*, 2022 WL 126305, at *3 (N.D. Cal. Jan. 13, 2022) (finding an arbitration agreement in a valid clickwrap agreement to be valid and enforceable under Delaware law).

11. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., is applicable to arbitration agreements evidencing a transaction involving interstate commerce, such as the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

NOTICE OF PETITION AND PETITION TO
CONFIRM ARBITRATION AWARD

1  transaction for the purchase and delivery of Bitcoins at issue here.  The FAA provides that at any

2  time within one year after an arbitration award is made, a party may apply to the court "for an

3  order confirming the award, and thereupon the court must grant such an order unless the award is

4  vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  9 U.S.C. § 9.

5  This provision creates a strong presumption in favor of confirmation because "[j]udicial review of

6  an arbitrator's decision 'is both limited and highly deferential.'"  *Barnes v. Logan*, 122 F.3d 820,

7  821 (9th Cir. 1997) (quoting *Sheet Metal Workers' Int'l Ass'n v. Madison Indus., Inc.*, 84 F.3d

8  1186, 1190 (9th Cir. 1996)).  Additionally, this Court infers the parties' consent to judicial

9  confirmation based on the language of the arbitration agreement.  *See Goldman v. Gagnard*, 2011

10  WL 13177619, at *2 n. 2 (N.D. Cal. Oct. 27, 2011).  Under the terms of the Agreement, the

11  Parties also consented to the venue and personal jurisdiction of the federal courts located in San

12  Francisco, California.  *See* Mongan Decl., Ex. 1 (Terms of Service) at 18 [§ 11.6].

13        12.     Here, the arbitration provision in the Agreement provides for "binding" arbitration

14  to be administered by JAMS.  *See* Mongan Decl., Ex. 1 (Terms of Service) at 17 [§ 11.3].  There

15  are no grounds to vacate, modify, or correct the award.  The Arbitrator reasonably concluded that

16  Respondent would not attend the hearing after Respondent did not reply to River's demands,

17  participate in the initial management conference, or exchange information as required by Pre-

18  Hearing Order No. 1.  *See* Mongan Decl., Ex. 5 (Final Award) at 3.  The Arbitrator nonetheless

19  gave Respondent over thirty days written notice of the date and time of the hearing, and the

20  hearing proceeded as scheduled.  *Id.*  At the hearing, River produced uncontroverted evidence and

21  proved its claim that Respondent initiated fraudulent purchases of Bitcoin, resulting in River's

22  loss of $190,000.00.  *Id.*  Therefore, this Court should confirm the Arbitrator's award and enter

23  judgment in River's favor.

24  //

25  //

26  //

27  //

28  //

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

NOTICE OF PETITION AND PETITION TO
CONFIRM ARBITRATION AWARD

1  **VI.     <u>CONCLUSION</u>**

2          For the reasons stated above, River requests that the Court enter an order confirming the

3  Arbitrator's award and enter judgment accordingly.

4

5  Dated: March 19, 2025                    Respectfully submitted,

6                                           MORGAN, LEWIS & BOCKIUS LLP

7

8                                           By   */s/ Kevin M. Papay*

9                                                Kevin M. Papay

10                                               Attorneys for Petitioner
                                                 River Financial Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6                    NOTICE OF PETITION AND PETITION TO
                     CONFIRM ARBITRATION AWARD

1    MORGAN, LEWIS & BOCKIUS LLP
     Kevin M. Papay, Bar No. 274161
2    kevin.papay@morganlewis.com
     One Market, Spear Street Tower
3    San Francisco, CA  94105-1596
     Tel:    +1.415.442.1000
4    Fax:    +1.415.442.1001

5    Attorneys for Petitioner
     RIVER FINANCIAL INC.
6

7

8

9                          UNITED STATES DISTRICT COURT

10                       NORTHERN DISTRICT OF CALIFORNIA

11

12   RIVER FINANCIAL INC., a Delaware        Case No.
     corporation,
13                                           **DECLARATION OF WILLIAM**
                         Petitioner,         **MONGAN IN SUPPORT OF**
14                                           **CLAIMANT RIVER FINANCIAL**
                 v.                          **INC.'S PETITION TO CONFIRM**
15                                           **ARBITRATION AWARD**
     JONATHAN ZHOU, an individual,
16
                         Respondent.
17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DECLARATION OF BILL MONGAN IN SUPPORT OF
PETITION TO CONFIRM ARBITRATION AWARD

### DECLARATION OF WILLIAM MONGAN

I, William Mongan, Esq., declare and state as follows:

1. I am the General Counsel of River Financial Inc. I have personal knowledge of the facts set forth in this declaration, and if I were called as a witness, I could and would testify competently to them.

2. Attached as **Exhibit 1** is a true and correct copy of River Financial Inc.'s Terms of Service, with an effective date of October 4, 2023. These were the operative terms of service governing access to and use of River Financial Inc.'s website and related services, applications, and content provided by River Financial Inc. on or about February 2, 2024, the date that Jonathan Zhou ("Mr. Zhou") established an account with River Financial Inc. to buy and sell Bitcoins.

3. Attached as **Exhibit 2** is a true and correct copy of a demand letter that I sent to Jonathan Zhou on behalf of River Financial Inc. on or about April 9, 2024, demanding payment for the Bitcoins delivered to Mr. Zhou in February and March of 2024.

4. Attached as **Exhibit 3** is a true and correct copy of the demand for arbitration that River Financial Inc. made on Mr. Zhou on or about April 22, 2024.

5. Attached as **Exhibit 4** is a true and correct copy of the Pre-Hearing Order No. 1 that was issued on or about September 5, 2024 by the Honorable Robert A. Baines (Ret.), our arbitrator for the JAMS arbitration between River Financial Inc. and Mr. Zhou.

6. Attached as **Exhibit 5** is a true and correct copy of the Final Award entered by the Honorable Robert A. Baines (Ret.) following a JAMS arbitration hearing between River Financial Inc. and Mr. Zhou on October 18, 2024. The arbitration hearing proceeded as described in the Final Award. I represented River Financial Inc. at the arbitration hearing, along with outside counsel Michael D. Wright, Esq., of Savage Royall & Sheheen LLP.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 10, 2025.

By _____
William Mongan

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DECLARATION OF WILLIAM MONGAN IN SUPPORT
OF PETITION TO CONFIRM ARBITRATION AWARD

# Exhibit 1



# Terms of Service

River Financial Inc.

80 E. Rich Street, Suite 600
Columbus, OH 43215

Effective Date:  Oct 4, 2023



# 1. Introduction

Thank you for using River! These Terms of Service (the "Terms" or "Agreement") govern your rights and obligations relating to your access to and use of the https://river.com website and any other related services, applications, and content provided by us (collectively, the "Services").

BY REGISTERING FOR A USER ACCOUNT OR USING THE SERVICES, YOU HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY THESE TERMS. PLEASE READ THESE TERMS CAREFULLY, AS THEY CONTAIN IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND RESPONSIBILITIES, INCLUDING LIMITATION OF OUR LIABILITY, BINDING ARBITRATION, AND WAIVER OF CLASS ACTION CLAIMS. IF YOU DO NOT ACCEPT THIS AGREEMENT IN ITS ENTIRETY, YOU MAY NOT ACCESS OR USE THE SERVICES.

All references in these Terms to "we," "us," "our," or "River" refer to River Financial Inc., a Delaware corporation, and our affiliated entities, as applicable. The term "you," "your," or "user" refers to any individual or entity that accesses the Services, including any individuals who access the Services on behalf of an entity.

# 2. Changes to these Terms

We reserve the right to change these Terms from time to time, with or without notice to you. If you continue to use the Services, you consent to the new Terms, as modified. Any changes to these Terms will become effective on the "Effective Date" indicated above. If you continue to use the Services after the Effective Date, you consent to the new Terms. We will always have the latest Terms posted on the Services.

# 3. Overview of the Services

The Services provide users an easy-to-use, secure Bitcoin exchange and custodial wallet. What separates River from the pack is our deep functionality built exclusively around the Bitcoin network. Subject to these Terms, users that meet the eligibility requirements described below are able to buy, sell, send, receive, and store Bitcoin.

River is a regulated financial institution. As such, we endeavor to comply with all laws and regulations applicable to our business, including the Bank Secrecy Act ("BSA"), anti-money laundering and terrorism financing ("AML") regulations, and federal and state money transmission licensing requirements of the states and jurisdictions in which we operate.

# 4. Your User Account & Information


RIVER FINANCIAL

Terms of Service

## 4.1 You must meet eligibility criteria to use the Services.

To be eligible to use the Services, you must meet the following requirements:

- You must be at least 18 years old.
- You must register for a River user account via the Services (a "User Account") and successfully complete the identity verification process described below.
- You must be a citizen or permanent legal resident of the United States and have a Social Security Number or Taxpayer ID.
- You must reside in a state or jurisdiction in which we operate. To see a list of the states or jurisdictions in which we operate, please visit here.

By signing up for a User Account, you represent and warrant that you are a resident of a state or jurisdiction in which we operate and meet all of the eligibility criteria for the Service.

## 4.2 You must register for a User Account.

Before being able to use the Services to buy, sell, receive or send Bitcoin, you will be required to register for a User Account. You agree to provide accurate, current, and complete information during the registration process and to update such information to keep it up to date. You can only have one River User Account at any time. We reserve the right to suspend or terminate your User Account according to these Terms if we determine that any information provided by you is inaccurate or incomplete. We may, in our sole discretion, refuse to open a User Account, or limit the number of User Accounts that you may hold or suspend or terminate any User Account or the trading of Bitcoin in your account.

If you register for a User Account on behalf of an entity, you represent and warrant that you have authority to (i) accept these Terms on behalf of and bind such party, and (ii) provide information on behalf of such party.

## 4.3 You must safeguard your User Account.

You are responsible for safeguarding your User Account information, including your password. You agree not to disclose your password to, or share your User Account with, any third party. You agree to take sole responsibility for any activities or actions under your User Account, whether or not you have authorized such activities or actions. You will immediately notify us of any unauthorized use of your User Account.

You agree that we will not be liable for any loss or harm that you incur if someone else uses the Services from any of your devices, either with or without your knowledge, and that you will be solely responsible for such use, whether or not you authorized the use.

## 4.4 We will verify your identity.

As a regulated financial institution, we are required to obtain information about and verify the identity of our users. To comply with our BSA/AML obligations, we will request that you provide certain information to us about you. This information will be used by us for the purposes of

3

RIVER FINANCIAL                                                        Terms of Service

identity verification and the detection of money laundering, terrorist financing, fraud, or any other financial crimes. You agree that all such information provided by you will be complete and accurate, that you will keep us updated if any of the information you provide changes, and that we may keep a record of such information consistent with our BSA/AML obligations.

In addition to collecting information from you, we are required to take reasonable steps to verify your identity as a user. You expressly authorize River to take any and all actions that we reasonably deem necessary to verify your identity or protect you and/or us against fraud or other financial crime. These may include, but are not limited to, engaging third-party services to assist with such verification efforts, sharing your information with such third parties, and collecting additional information about you from such third parties.

### 4.5 Some cases require Enhanced Due Diligence.

Certain users may be subject to a more rigorous identity verification program ("Enhanced Due Diligence") consistent with our BSA/AML obligations due to the increased risk of money laundering, fraudulent activity and sanctions risk. In such cases, you agree to comply with River's requests to provide such information and documentation as is necessary for us, either directly or through our third-party vendors, to complete the Enhanced Due Diligence. You acknowledge that if we determine, in our sole discretion, that you are unable to satisfy the requirements of our Enhanced Due Diligence, certain functionalities of the Services may not be available to you.

### 4.6 You agree to our Privacy Policy.

The type of information we collect from and about you as you use the Services, as well as how we use, share and retain that information is set forth in our Privacy Policy. By accessing and using the Services, you grant us the right to use, share and retain the information we collect from and about you as described in these Terms and in our Privacy Policy.

### 4.7 You may be subject to the terms of a Referral Program.

We may offer referral programs for inviting others to use the Services or for using the Services following such an invitation (a "Referral Program"). Any incentives offered under any such Referral Program are subject to the then current Referral Program terms and are additionally subject to our sole discretion.

## 5. Buying, Selling, Transferring, And Holding Bitcoin

### 5.1 You may buy and sell Bitcoin for U.S. Dollars.

Subject to the eligibility and verification requirements set forth in these Terms, you may buy or sell Bitcoin in exchange for U.S. Dollars ("USD"). We accept transfers of USD into your User Account via Automated Clearing House ("ACH") transfer or wire transfer. We currently do not support the purchase of Bitcoin through credit card, debit card, or any other means.

4

## 5.2 We will provide you with a Bitcoin wallet.

Subject to the eligibility and verification requirements set forth in these Terms, we will provide you with a digital wallet to hold Bitcoin (a "Wallet"). You agree and acknowledge that the Wallet only supports Bitcoin, and no other digital currencies. You may not attempt to transfer to or store in your Wallet any other digital currency or any other asset other than Bitcoin. You should verify the details of any Bitcoin transaction prior to submitting it to us. River assumes no responsibility for any violation, or attempted violation, of the foregoing, which may result in loss of assets.

## 5.3 You own your Bitcoin.

River does not own or borrow any Bitcoin in your Wallet. Rather, all Bitcoin in your Wallet are custodial assets held by River on your behalf. All Bitcoin assets are held in full reserve and do not earn interest. You have all rights, title, and interest in and to the Bitcoin held by us for your benefit. You have the power to store, sell, or transfer all such Bitcoin. Except as required by law or as otherwise set forth in these Terms, we do not sell, transfer, or otherwise dispose of your Bitcoin without your consent. As the owner, you alone bear all risk of loss, including loss of value, associated with the Bitcoin in your Wallet.

## 5.4 Bitcoin is not an insured asset.

You understand and acknowledge that Bitcoin is not subject to protections or insurance provided by the Federal Deposit Insurance Corporation, the Securities Investor Protection Corporation, or any other agency or organization. River will have no responsibility or liability to you or anyone else for any loss in the value of Bitcoin held in your Wallet.

## 5.5 You may transfer USD to and from your User Account, and you may hold USD in your User Account.

You may transfer USD to and from your User Account via ACH. If you elect to use ACH transfer in connection with the Services, you must designate and connect a valid U.S. bank account to your User Account. River does not charge a fee for ACH transfers, but is not responsible for any fees charged by your bank.

You may transfer USD to and from your User Account via wire transfer. River charges a fee for wire transfers, which we will communicate to you via the Services. River is not responsible for any fees charged by your bank. In certain circumstances, and at our sole discretion, we may require you to connect a valid U.S. bank account to your User Account to continue your use of the Services.  If you elect to use wire transfers in connection with the Services, you should verify all wire information prior to submitting your transaction. River is not responsible for transfers that do not include the correct transfer information. If you have questions, contact our support team at support@river.com.



You are permitted to maintain a balance of USD in your User Account for the purpose of using the Services. Your USD balance is held on deposit in an account established specifically for our clients' benefit. The account is legally distinct from our transaction and business accounts.

## 5.6 You buy Bitcoin from us and sell Bitcoin to us.

When you place an order to buy Bitcoin through the Services, you are requesting to purchase, directly from River, the quantity of Bitcoin indicated on your purchase order at the then-applicable Bitcoin buy-price listed on the Services and on your purchase order. Subject to the requirements set forth in these Terms and as otherwise communicated by us to you, when your order executes, we will sell you Bitcoin from our reserves, credit such quantity of Bitcoin to your Wallet, and debit your designated bank account for the applicable purchase price. When you place a buy order through the Services, you expressly authorize us to initiate a debit entry to your linked bank account for the amount listed in the order, which shall include our transaction fees and any other fees as set forth in these Terms. You are required to maintain an adequate balance in your bank account to cover the fees associated with any Bitcoin you purchase.

Additionally, for recurring orders, you authorize us to execute purchases on your behalf automatically at the interval of your choosing. You authorize us to initiate a debit entry to your linked bank account to facilitate recurring orders, and you understand that such debits may occur up to one week prior to the scheduled date for your recurring purchase. If you do not have sufficient funds available for your recurring orders, we may make additional attempts to pull funds. You may cancel recurring orders at any time. River may cancel or modify your recurring order for any reason in its sole discretion.

Conversely, when you place an order to sell Bitcoin through the Services, you are requesting to sell, directly to River, the quantity of Bitcoin indicated on your sale order at the then-applicable Bitcoin sell-price listed on the Services and on your purchase order. Subject to the requirements set forth in these Terms and as otherwise communicated by us to you, when your order executes, we will buy such amount of Bitcoin from you, deduct such quantity of Bitcoin from your Wallet, and credit your designated bank account for the applicable sale price.

## 5.7 We set the Bitcoin price listed on the Services.

We do not make any guarantees or representations as to the accuracy of the Bitcoin price listed on the Services as of any point in time. We determine the buy-price and sell-price of Bitcoin at our discretion based on available market information. River will not be responsible for any differences between the buy-price or sell-price of Bitcoin listed on the Services (a "River Price") and the prices listed on any third-party services.

## 5.8 Your User Account may be subject to certain limitations.

In order to detect money laundering, fraud and other criminal activity, we may impose certain limitations on your User Account and your ability to buy, sell, and transfer Bitcoin. These may include, but are not limited to, the following measures:

- Subject to these Terms, you may purchase Bitcoin after registering a User Account and submitting the required information but before we have verified your identity. However, you may not execute any other transactions, including transferring Bitcoin into and out of your Wallet or selling Bitcoin, until we have verified your identity consistent with these Terms.
- We may impose limits on the amount of Bitcoin you can buy or sell in a given period. Your transaction limits may vary depending on a number of factors, including the verification steps you have completed. To view your transaction limits, you may review this knowledge base article. We reserve the right to change applicable limits as we deem necessary in our sole discretion.
- Any transfer of USD to your User Account will be subject to a settlement period to ensure that the transaction was not fraudulent. During this settlement period, any Bitcoin that you buy with these funds will appear in your "Total Balance," but it will not be reflected in your "Available Balance" (i.e. the amount of Bitcoin that is eligible for withdrawal or transfer). Therefore, you may not be able to withdraw or transfer unsettled USD or Bitcoin during the settlement period.
- We may further limit your ability to withdraw or transfer Bitcoin or USD. We reserve the right to cancel or reverse any transaction, even after funds have been debited from your bank account or Bitcoin has been received by us.

## 5.9 We charge transaction fees.

When you buy or sell Bitcoin using the Services, we charge a transaction fee. Our most updated transaction fees are always listed on the Services. We will also notify you of our fees for any transaction before you execute a buy or sell order, and we will include such fees on the receipt we provide to you after the transaction is complete. By using the Services, you agree that we may collect our transaction fees by reducing them from your Available Balance.

Please note that our fees are subject to change. We will provide you notice of changes in our fees by posting the changes to the Services or otherwise communicate them to you in writing. Your continued use of the Services after the effective date of such change will constitute your agreement to pay the updated fees.

## 5.10 We will collect third-party fees.

In addition to our fees, we may also charge third-party fees related to the execution of a wire or a Bitcoin transaction. We will calculate such third-party fees at our discretion, although we will always notify you of the fee at or before the time you authorize the transaction. You agree that we may collect such third-party fees by reducing them from your Available Balance.

## 5.11 You are responsible for maintaining adequate funds in your bank

account.

If you do not have sufficient funds in your bank account to cover a transaction you initiate through the Services, or in the event of a returned transaction, we may take any action we deem necessary and appropriate, including reversing the transaction, if possible, or withdrawing Bitcoin or USD from your User Account to cover the cost of the transaction and any other fees or losses incurred by us as a result of insufficient funds or any returned transaction.

## 5.12 Bitcoin transactions are not reversible.

Please be advised that Bitcoin transactions are not reversible. As such, once a buy or sell order is completed or is in pending status, it may not be cancelled. Similarly, you should exercise caution when making transfers from and to your Wallet, as such transactions cannot be stopped once initiated.

When you or any third party transfers Bitcoin to your Wallet, you must use a Bitcoin address or Lightning Network invoice associated with your Wallet that is provided to you by us. The transferring party (whether you or a third party) shall be solely responsible for executing the transaction properly. River assumes no responsibility for, and shall not be liable to you or any third party, for any lost Bitcoin or other assets as a result of an incorrect Bitcoin address, Lightning Network invoice, inadequate network/miner fees, an attempt to transfer any digital assets other than Bitcoin to your Wallet, or any other improper transfer instructions.

Similarly, when you transfer Bitcoin from your Wallet to an external address, you are solely responsible for ensuring that the recipient is able to receive the Bitcoin and that the instructions you provide to us are accurate. River assumes no responsibility for, and shall not be liable to you or any third party for, any Bitcoin in your Wallet once an outbound transfer is initiated pursuant to your instructions.

## 5.13 You are solely responsible for any taxes.

Your purchase and sale of Bitcoin may be subject to certain tax obligations. It is your sole responsibility to determine whether, and to what extent, any taxes apply to any transactions you conduct through the Services, and to withhold, collect, report and remit the correct amounts of taxes to the appropriate tax authorities. Your transaction history is available through your User Account.

River will default the cost basis method to First In First Out (FIFO) unless you select a different method. Effective February 28,2023, for sells, your cost basis methodology will first be applied to known lots then unknown lots. For withdrawals and sends, unknown lots will be sent first, then known lots. More information on the cost basis methodologies can be found here.

## 5.14 We may be required to report and transfer unclaimed Bitcoin or USD to authorities.

8



If your User Account is closed or becomes inactive, we may be required to report any remaining Bitcoin or USD in your User Account to the authorities after the passage of applicable waiting periods specified by law. If this occurs, we may attempt to contact you at the email or mailing address we have on file for you. If we are unable to contact you after a reasonable amount of time, we may be required to deliver such Bitcoin or USD to the authorities.

## 5.15 Our obligations in the event of your death.

If you have agreed to a Transfer on Death Authorization and Agreement ("TODAA") and we receive notice of your death, we will attempt to distribute your account to your designated beneficiaries consistent with the terms of your TODAA. These Terms will neither supersede not affect your acceptance of the TODAA. In addition to other requirements set forth in your TODAA, your beneficiary(ies) will be required to agree to the Terms.

If you have not agreed to a TODAA and we have reason to believe that you have died (including if we receive legal documentation of your death), we will suspend your User Account. We may also take steps to investigate, including through third parties, whether you have died. If we reasonably determine that you have died, any Bitcoin or USD in your User Account will be held until your designated fiduciary creates a new User Account and undergoes our verification procedures set forth in these Terms. You agree that your fiduciary may not access your Bitcoin or USD unless and until he or she creates a new User Account. We reserve the right, at our sole discretion, to effect the transfer of the value in your User Account to your fiduciary by selling any Bitcoin in your User Account and transferring the USD proceeds to your fiduciary. If you have not designated a fiduciary on your User Account, we may either require an order designating a fiduciary from a court having competent jurisdiction over your estate or otherwise determine a fiduciary entitled to inherit your Bitcoin or USD based on our review of your will, trust, or other legal documentation.

## 5.16 Automatic Withdrawal of your Bitcoin.

When you set up Bitcoin automatic withdrawals, you are requesting to automatically withdraw a portion of or all of your Bitcoin balance (less fees) from a select River account to a Bitcoin address of your choice. You are able to edit or cancel your automatic withdrawals at any time. If you delete your automatic withdrawals, any automatic withdrawal transactions that are pending will continue to execute as they cannot be canceled. If you edit your automatic withdrawals, any automatic withdrawal transactions that are pending will execute according to the updated settings.

The Bitcoin network fees associated with this on-chain Bitcoin transfer will be determined at the time of execution, but will not exceed 3% of your transaction total. When the withdrawal is successfully executed, we will send you a confirmation email with the exact fee deducted from your transaction.



Only settled Bitcoin will be withdrawn; more information regarding the settlement period can be found in section '5.8 your User Account may be subject to certain limitations.'

You are responsible for ensuring the provided on-chain Bitcoin address is accurate. More information regarding Bitcoin transactions can be found in section '5.12 Bitcoin transactions are not reversible.'

### 5.17 Target Price Orders.

River may permit you to request a target price order (a "Target Price Order"), which allows you to specify a price (the "Target Price") at which you would like to buy or sell bitcoin and the amount that you would like to buy or sell. A Target Price Order will result in a buy or sell order being placed on your behalf when the River Price matches your Target Price.

When you request a Target Price Order, River will restrict the USD (in the case of a buy order) or bitcoin (in the case of a sell order) necessary to complete the Target Price Order, including any applicable fees. If you request to fund your Target Price Order via ACH, you authorize River to withdraw funds from your bank account in the amount sufficient to cover your requested Target Price Order and any applicable fees, and to restrict those funds upon receipt.

River cannot guarantee that the Target Price you select will ever be reached. In the event that the Target Price matches the River Price (a "Target Event"), as determined in our sole discretion, you authorize River to place a buy order or sell order as specified by you in the Target Price Order. You may cancel a Target Price Order at any time prior to a Target Event. A Target Price Order may be canceled by River at any time and for any reason, with no liability to you for any losses incurred as a result of such cancelation. Once a Target Price Order is canceled, any USD or bitcoin that has been restricted in connection with the Target Price Order will once again be available for transactions.

All Target Price Orders are requested at your own risk. Disruptions to the Services, including rapidly shifting prices or third-party outages, may impact River's ability to execute a Target Price Order and may result in the cancelation of your Target Price Order. We are not liable to you in the event that a Target Price Order is not able to be completed upon a Target Event as a result of any such disruptions.

## 6. Our Intellectual Property Rights

The Services contain important and proprietary property owned by us, including software, that constitutes our trademarks, trade secrets and other intellectual property. Nothing in these Terms shall be construed as a conveyance of any ownership right or title in or to our property. We only grant you a limited, nonexclusive, non-transferable, non-sublicensable, and revocable



license to use the Services for the purposes permitted by these Terms, and only for as long as you are permitted to access the Services.

The Services, including any images, illustrations, posts, audio clips, photographs, editorial content, notices, software (including html-based computer programs), and other content related to the Services, are the property of River and its affiliates, or are the property of a third party who has granted River permission to use such material, and in any case are protected from unauthorized copying and dissemination by copyrights that are owned or licensed by River and by copyright law, trademark law, international conventions and other intellectual property laws. All logos or product names are trademarks or registered trademarks of their respective owners. You may not reproduce, perform, create derivative works from, republish, upload, post, transmit, distribute, decompile, reverse-engineer, disassemble, or otherwise convert in any way whatsoever any materials from the Services without our prior written permission. Nothing contained on these Terms should be construed as granting, by implication, estoppel, or otherwise, any license or right to use the Services or any information displayed on the Services except: (a) as expressly permitted by these Terms or (b) with the prior written permission of River or such third party that may own the trademark or copyright of information displayed on the Services.

# 7. Services Beyond Our Control

River is not responsible for, makes no guarantees about, and assumes no liability for, any services beyond our reasonable control. These may include, but are not limited to, the following:

- Any third-party sites or services that are integrated with the Services. Such third parties include, without limitation, vendors that assist us with verifying the identity of our users, enabling transactions, and otherwise providing the core functionality of the Services.
- Any third-party websites and businesses that are referenced in the Services. You acknowledge and agree that we are not responsible for the accuracy, content, or functionality of the services or information provided on or by such third-party websites or businesses. Nothing on the Services shall be considered an endorsement, representation, or warranty of anything contained in such third-party communications, including all products or services advertised therein, if any.
- The underlying software protocols that governs the operation of Bitcoin. You acknowledge that River has no control over the Bitcoin protocol and cannot guarantee its functionality; that the Bitcoin subject to forks and other changes to the underlying protocol that may impact the value and functionality of the Bitcoin in your Wallet; and that you understand all of the risks associated with holding Bitcoin as an asset. In the event of any fork in the Bitcoin protocol, River may take any action it deems necessary, in its sole discretion, in connection with such fork. You understand that, as a result, River may choose to disregard any forked assets and that you may not be entitled to receive



such assets.

# 8. Restrictions on your use of the Services

## 8.1 You may only use the Services for its intended purpose.

You represent and warrant that your use of the Services does not and will not conflict with any pre-existing obligation in conflict or in any way inconsistent with the provisions of these Terms. You may only use the Services for its intended purpose, and not for any other purpose. Any non-permitted use of the Services, as determined in our sole discretion, shall be grounds for immediate termination of these Terms and immediate termination of your use of, and access to, the Services. You are only entitled to access and use our Services for lawful purposes.

## 8.2 You may not engage in prohibited conduct.

You covenant and represent that you will not use the Services to engage in, or aid or abet in, the violation of any law, statute, ordinance, or regulation. These include, without limitation, violation of any sanctions programs administered in any jurisdiction in which we operate (such as the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC")).

Without limiting the generality of the foregoing, you may not use the Services in connection with any of the following businesses or activities:

- Intellectual property or proprietary rights infringement: sales, distribution, or access to counterfeit music, movies, software, or other licensed materials without the appropriate authorization from the rights holder; any product or service that directly infringes or facilitates infringement upon the trademark, patent, copyright, trade secrets, or proprietary or privacy rights of any third party;
- Counterfeit or unauthorized goods: sale of counterfeit goods; unauthorized sale or resale of brand name or designer products or services; sale of goods or services that are illegally imported or exported;
- Gambling or games of skill: lotteries; bidding fee auctions; sports forecasting or odds making for a monetary or material prize; fantasy sports leagues with cash prizes; internet gaming; contests; sweepstakes; games of chance including legal or illegal forms of gambling, internet gambling, sweepstakes and contests with a buy-in or cash prize; charity sweepstakes and raffles for the explicit purpose of fundraising;
- Soliciting, selling or offering for sale regulated or illegal products or services: cannabis dispensaries and related businesses; sale of tobacco, e-cigarettes, and e-liquid; online pharmacies; prescription-only products including card-not-present pharmaceuticals; peptides and research chemicals; fake references or identification services; age-restricted goods or services; weapons and munitions; gunpowder and other explosives; fireworks and related goods; toxic, flammable, and radioactive materials; products and services with varying legal status on a state-by-state basis; goods or services, the sale of which is illegal under applicable law in the jurisdictions to which



your business is targeted or directed;

- Adult content and services: pornography and other obscene materials depicting nudity or explicitly sexual acts; sites offering any sexually-related services such as prostitution, escorts, pay-per view, adult live chat features; adult toys; adult video stores and sexually oriented massage parlors; gentleman's clubs, topless bars, and strip clubs; sexually oriented dating services;
- Unfair, predatory or deceptive practices: investment opportunities or other services that promise high rewards; sale or resale of a service without added benefit to the buyer; resale of government offerings without authorization or added value; sites that we determine in our sole discretion to be unfair, deceptive, or predatory towards consumers; platforms that facilitate the publication and removal of content (such as mug shots), where the primary purpose of posting such content is to cause or raise concerns of reputational harm;
- Aggregation: engaging in any form of licensed or unlicensed aggregation of funds owed to third parties, factoring, or other activities intended to obfuscate the origin of funds; payment facilitation;
- Drugs and drug paraphernalia: sale of narcotics, controlled substances, and any equipment designed for making or using drugs, such as bongs, vaporizers, and hookahs;
- Multi-level marketing: pyramid schemes and multi-level marketing;
- Pseudo pharmaceuticals: nutraceuticals, pseudo-pharmaceuticals and other products that make health claims that have not been approved or verified by the Food and Drug Administration (or equivalent applicable local and/or national regulatory body); or
- High risk businesses: any other businesses that we believe poses elevated financial risk, legal liability, or violates the policies of our banking partners.

In addition to the above, you may not engage in any of the following activities on the Services:

- Violating the rights, including intellectual property rights, of others;
- Activities that could be harmful to minors;
- Harassment of others;
- Transmission of "junk mail" or unsolicited mass mailing or "spam" or harvesting;
- Abusive, threatening, obscene, defamatory or libelous conduct;
- Soliciting passwords or personally identifiable information for unlawful purposes from other users of the Services;
- Using any robot, spider, other automatic device, or manual process to monitor, copy, or "scrape" web pages or the content contained in the Services or for any other unauthorized purpose without our prior written consent;
- Using any device, software, or routine to interfere with, or attempt to interfere with, the proper working of the Services;
- Decompiling, reverse engineering, or disassembling the software underlying the Services or attempting to do so; or



- Taking any action that imposes an unreasonable or disproportionately large load on the Services or our hardware and software infrastructure or that of any of its licensors or suppliers.

## 8.3 Certain activities require our consent.

You may not use the Services to engage in any of the following activities or businesses without our prior written consent, which we may withhold in our absolute discretion:

- Money and legal services: financial institutions, money transmitters and money services businesses (including, without limitation, selling or offering gift cards, prepaid cards, in-game currency unless the merchant is the operator of the virtual world), digital currency transmitters, check cashing, wire transfers, money orders; currency exchanges or dealers; bill-pay services; crowdfunding; insurance; bail bonds; collections agencies; law firms collecting funds for any purpose other than to pay fees owed to the firm for services provided by the firm (e.g., firms cannot use the Services to hold client funds, collection or settlement amounts, disputed funds, etc.);
- Investment & credit services: securities brokers; mortgage consulting or debt reduction services; credit counseling or repair; investment services; real estate opportunities; lending instruments;
- Charitable organizations: Accepting donations or otherwise operating a charitable nonprofit organization (including a religious organization); or
- Gaming: Operating games that are not defined as gambling by law, but which require an entry fee and award a prize.

# 9. Termination

## 9.1 We may terminate your access to the Services.

We reserve the right to take action to limit or prevent your access to our Services if we, in our sole discretion, determine that limiting or preventing your access to our Services is necessary or advisable. Circumstances in which we may limit or prevent your access to our Services include, but are not limited to, if we deem that such action is necessary based on: (i) your use of the Services in a way that is unlawful or would potentially expose us to liability; (ii) disruption of the Services by you to others; (iii) your violation of these Terms or our Privacy Policy; (iv) your violation of any applicable laws, rules, regulations, and agreements that may apply to you; and (v) your use of the Services in a way that could cause harm to any person or entity. Such action may include, without limitation, reversing any transaction, suspending your User Account, or terminating your access to the Services altogether.

## 9.2 You may terminate this Agreement.

If you would like to terminate this legally binding agreement with River, you must contact us at support@river.com to deactivate your User Account. We may request certain information and/or documentation to verify your request to deactivate your User Account. Upon any

 RIVER FINANCIAL

termination of this Agreement, whether by you or by us, you must discontinue any further use of the Services. Once deactivated, you may request to re-activate your User Account. We reserve the right, in our sole discretion, to determine whether to re-activate your User Account. Please note that even if you terminate your User Account, we may retain information about you consistent with our BSA/AML obligations and our Privacy Policy.

## 9.3 Certain parts of these Terms will continue after termination.

Notwithstanding any termination of these Terms, any provision of these Terms that by its nature and context is intended to survive its termination will so survive. These include, without limitation, provisions related to limitation of our liability, disclaimer of warranties, our intellectual property rights, indemnity and dispute resolution.

# 10. LIMITATION OF LIABILITY; DISCLAIMERS; INDEMNIFICATION

## 10.1 River does not provide investment or other advice.

RIVER DOES NOT PROVIDE ANY INVESTMENT, FINANCIAL, TAX, LEGAL OR OTHER PROFESSIONAL ADVICE. NO FEATURES, TOOLS, OR INFORMATION AVAILABLE THROUGH THE SERVICES SHOULD BE CONSTRUED AS ADVICE. WE ENCOURAGE YOU TO CONSULT WITH THE APPROPRIATE FINANCIAL AND TAX ADVISORS TO UNDERSTAND THE IMPLICATIONS OF BUYING, SELLING AND HOLDING BITCOIN. YOU UNDERSTAND THAT BUYING, SELLING AND HOLDING BITCOIN CARRIES RISK. YOU AGREE TO USE THE SERVICES TO HOLD AND TRANSACT IN BITCOIN AT YOUR SOLE RISK.

## 10.2 You assume the risk of using the Services.

RIVER MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED (SEE BELOW), AS TO THE CONTENT OR OPERATION OF THE SERVICES OR OF THE SERVICES. YOU EXPRESSLY AGREE THAT YOUR USE OF THE SERVICES IS AT YOUR SOLE RISK.

## 10.3 The Services are provided "as-is" and without any warranty.

WE ARE MAKING THE SERVICES AVAILABLE "AS IS" AND, TO THE MAXIMUM EXTENT PERMITTED BY LAW, WE EXPRESSLY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE SERVICES, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT. YOU ASSUME THE RISK OF ANY AND ALL DAMAGE OR LOSS FROM THE USE OF, OR INABILITY TO USE, THE SERVICES. WE DO NOT WARRANT THAT THE OPERATION OF THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE. RIVER MAKES NO REPRESENTATION, WARRANTY OR GUARANTEE THAT THE CONTENT THAT MAY BE AVAILABLE THROUGH THE SERVICES IS FREE OF INFECTION FROM ANY VIRUSES OR OTHER CODE OR COMPUTER PROGRAMMING ROUTINES THAT CONTAIN

 RIVER FINANCIAL

CONTAMINATING OR DESTRUCTIVE PROPERTIES OR THAT ARE INTENDED TO DAMAGE, SURREPTITIOUSLY INTERCEPT OR EXPROPRIATE ANY SYSTEM, DATA OR PERSONAL INFORMATION.

## 10.4 Our liability to you is limited.

TO THE MAXIMUM EXTENT PERMITTED BY LAW, WE SHALL NOT BE LIABLE FOR DAMAGES OF ANY KIND (INCLUDING, BUT NOT LIMITED TO, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, LOST PROFITS, OR LOST DATA, REGARDLESS OF THE FORESEEABILITY OF THOSE DAMAGES) ARISING OUT OF OR IN CONNECTION WITH YOUR USE OF THE SERVICES INCLUDING, BUT NOT LIMITED TO, DAMAGES ARISING FROM OR RELATED TO ANY OF THE FOLLOWING: ANY HARM OR DAMAGE CAUSED BY, OR OTHERWISE RELATED TO, YOUR RELIANCE ON INFORMATION PROVIDED THROUGH THE SERVICES; ANY LOSS OR UNAUTHORIZED DISCLOSURE OF DATA; ANY HARM OR DAMAGE CAUSED BY, OR OTHERWISE RELATED TO, YOUR USE OF OR INTERACTION WITH ANY SERVICES OFFERED THROUGH THE SERVICES; AND ANY VIOLATIONS OF APPLICABLE LAWS, RULES, REGULATIONS, AND OTHER AGREEMENTS. THIS LIMITATION SHALL APPLY REGARDLESS OF THE LEGAL THEORY OR FORM OF ACTION.

IN NO EVENT WILL OUR AGGREGATE LIABILITY ARISING OUT OF OR IN CONNECTION WITH THESE TERMS AND YOUR USE OF THE SERVICES EXCEED THE GREATER OF ONE HUNDRED DOLLARS ($100.00) AND THE FEES THAT YOU HAVE PAID TO US IN THE SIX (6) MONTHS PRECEDING THE EVENT GIVING RISE TO SUCH LIABILITY.

THE LIMITATIONS OF DAMAGES SET FORTH ABOVE ARE FUNDAMENTAL ELEMENTS OF THE BASIS OF THE BARGAIN BETWEEN YOU AND US. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR CERTAIN TYPES OF DAMAGES OR CAUSES OF ACTION, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

## 10.5 You agree to indemnify us.

In the event that any third party brings a claim against us related to your use of the Services or the use of your User Account (a "Claim"), you agree to indemnify, defend, and hold us and our agents harmless from and against any and all third party claims, losses, liabilities, damages, and/or costs (including reasonable attorneys' fees and costs) relating to such Claim. We will notify you promptly of any such Claim and will provide you with reasonable assistance, at your expense, in defending any such Claim; provided, however, that our failure to so notify you shall not relieve you of your indemnity obligations with respect to such Claim, but instead shall reduce those obligations by the amount of damages or increased costs and expenses attributable to our failure to give notice. We reserve the right to approve counsel retained by you, to take control of the defense (at our expense), and to participate in the defense of any Claim (at our expense) for which indemnity is required. You may not settle any Claim without our prior consent.



# 11. Resolving Disputes

## 11.1 Contact us if you have any questions or concerns.

If you have any questions, concerns or complaints about the Services, your User Account, these Terms, or anything else, please contact our support team at support@river.com. We may ask you certain information about you and your User Account to respond to your inquiry.

## 11.2 You must follow our internal complaint process.

If our support team is unable to resolve your complaint, you must send us a complaint. Please include a description of your complaint, the resolution you are seeking, and any other relevant information. If you do not follow the formal complaint process described above before seeking arbitration or other legal action, we may seek to dismiss your claim.

Once you've initiated a complaint, we will investigate your claim. This may include reviewing the information you've provided and the information available to us. In certain cases, we may need to contact you to obtain additional information. Upon conclusion of the investigation, we will send you an email notice indicating whether we approve or reject the resolution you are seeking. If we deem appropriate, we may also offer to resolve your complaint through an alternative solution. We will aim to resolve your complaint within 15 business days of the date you submit your complaint. However, if we are unable to do so, we will inform you in writing and specify the deadline by which we will make a determination, which will not be more than 35 business days from the date you submitted your complaint.

## 11.3 You and River agree to arbitrate any disputes.

If we are unable to resolve your complaint through the process described above, you agree to resolve any dispute, claim, or controversy with River arising out of or relating to your use of the Services, regardless of the legal theory, in the following manner. First, we both agree to attempt in good faith to resolve the dispute through mediation administered by JAMS, which shall take place in San Francisco, California, and the costs of which shall be divided equally between you and River. Second, if the dispute is not resolved through informal resolution and mediation, we both agree to participate in binding arbitration administered by JAMS, which shall take place in San Francisco, California.

Either you or we may bring a lawsuit solely for injunctive relief without first engaging in the dispute resolution process described above.

We both agree that, in the event of arbitration, or in the event of a lawsuit as permitted by this Section or otherwise, the prevailing party shall be entitled to costs and fees (including reasonable attorneys' fees). Arbitration pursuant to this Section shall be confidential, and neither you, nor River, nor the arbitrator may disclose the existence, content or results of any arbitration, except as may be required by law or for purposes of enforcement or appeal of the



arbitration award. Judgment on any arbitration award may be entered in any court having proper jurisdiction.

## 11.4 You waive the right to class action and jury trial.

THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS SUBJECT TO THIS ARBITRATION CLAUSE TO BE ARBITRATED ON A CLASS ACTION OR CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (INCLUDING, BUT NOT LIMITED TO, AS A PRIVATE ATTORNEY GENERAL).

YOU AND RIVER EACH HEREBY IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

If any portion of this arbitration agreement is determined by a court to be inapplicable or invalid, then the remainder shall still be given full force and effect. Nothing contained in this Section shall limit our ability to take action related to your access to the Services as provided in these Terms.

## 11.5 Delaware law will govern these Terms.

These Terms shall be governed by the laws of the State of Delaware, without regard to conflict of law provisions.

## 11.6 We agree to resolve disputes in San Francisco, California.

In the event that a lawsuit is filed where permitted under the provisions above, or in the event that the provisions above are found not to apply to you or to a given dispute, we both agree that any judicial proceeding will be brought in the federal or state courts located in San Francisco, California. Both you and we consent to venue and personal jurisdiction there.

# 12. Electronic Signature and Delivery of Communications

By agreeing to these Terms, you consent to receiving all communications, agreements, disclosures, and notices related to your use of the Services electronically. These may include, but are not limited to, your consent to these Terms, any updates to these Terms and our Privacy Policy, details and notices about your User Account and transactions, and any other disclosures and notices. We will communicate all electronic disclosures to you by posting them on the River website or via email at the address associated with your User Account, and are deemed received as of the time and date sent by River.

To access documents electronically, you will need to have access to the River website and your email address using an Internet-connected device and a compatible web browser with cookies enabled (for example, Firefox version 3.6 and above, Chrome version 31.0 and above, or Safari

7.0 and above). You may retain documents in paper form by printing them using a printer, or electronically by saving them to a hard drive or cloud storage with sufficient space.

You agree to keep your email address updated at all times. You may update your contact information by logging into your User Account and updating the information in your account settings page.

If you wish to withdraw your consent to receiving electronic disclosures, you must contact us at support@river.com, in which case we may deactivate your User Account and terminate your access to the Services, as described above. If we choose to provide communications to you by mail, we may charge you additional fees.

# 13. Geographical Notices

## 13.1 Use outside of the United States.
River makes no claim that the Services are appropriate or may be used outside of the United States. If you access the Services from outside of the United States, you do so at your own risk and are responsible for compliance with the laws of your jurisdiction.

# 14. How to Contact Us

If you have any questions about these Terms or our Services, please feel free to contact us by email at support@river.com.

# 15. Miscellaneous

## 15.1 Severability
If, for whatever reason, any term or condition in these Terms is found unenforceable, all other terms and conditions will remain unaffected and in full force and effect.

## 15.2 Waiver
The failure to enforce any provision of these Terms is not a waiver of our right to do so later, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party.

## 15.3 Assignment
These Terms shall be binding on the parties and their respective successors and assigns. These Terms may be assigned by us without restriction. These Terms may not be assigned or otherwise transferred by you without our prior written consent.

## 15.4 Headings

 **RIVER** FINANCIAL

The section headings contained in these Terms are for reference purposes only and shall not affect the meaning or interpretation of these Terms in any way.

# Exhibit 2



River Financial Inc.
80 E. Rich Street, Ste 600, Columbus, OH 43215
(888) 801-2586 • river.com

*Via Electronic Mail and First-Class Mail*

Apr 9, 2024

To:     Jonathan Zhou
        689 Brunswick Street, San Francisco, CA 94112
        jonathanjzhou676@gmail.com

From:   Bill Mongan
        River Financial Inc.
        bill.mongan@river.com

Re:     Your Account Balance

Mr. Zhou,

I write on behalf of River Financial Inc. ("River"), in connection with your recent transactions. As you are aware, we received a notification from your bank indicating that the ACH transactions between you and River in February and March 2024 were unauthorized. **After reviewing your account activity, River believes that these transactions were, in fact, authorized by you.** Among other things, these transactions occurred at the same time—and from the same device—as your submission of your photo ID and your selfie. Plainly, you *were* in control of your account and *you* initiated the transfers of funds from your bank to River. River hereby demands the return of those funds.

By claiming that River was not authorized to debit your bank account, you have misrepresented the nature of this transaction to your bank. Please be advised: Any intentional attempt to obtain money from a financial institution by misrepresenting whether a transaction was authorized may result in the imposition of fines up to $1,000,000, or imprisonment up to 30 years, or both under the provisions of Federal law (18 U.S.C. §1344). River reports this activity to appropriate authorities.

Consistent with Section 11 of the Terms of Service, please consider this letter our attempt to resolve this matter. Please contact me at the email address above to discuss the prompt return of these funds. If we do not hear from you within five days, we will be commencing legal proceedings against you, in which we will pursue all available remedies, including any attorneys' fees. You are directed to avoid destroying any documents that may be relevant to this dispute.



River Financial Inc.
80 E. Rich Street, Ste 600, Columbus, OH 43215
(888) 801-2586 • river.com

Regards,

*William Mongan*

Bill Mongan
General Counsel
River Financial Inc.

# Exhibit 3

## SAVAGE ROYALL & SHEHEEN L.L.P.
ATTORNEYS AND COUNSELORS AT LAW

ROBERT J. SHEHEEN - OF COUNSEL
MOULTRIE B. BURNS, JR. - OF COUNSEL
WILLIAM B. COX, JR.
VINCENT A. SHEHEEN*
STEPHEN R. SMOAK
MICHAEL D. WRIGHT
GREG B. COLLINS

HENRY SAVAGE, JR., 1903-1990
EDWARD M. ROYALL, 1953-2022

1111 CHURCH STREET
CAMDEN S.C. 29020

P.O. DRAWER 10
CAMDEN S.C. 29021

AUSTIN M. SHEHEEN

*CERTIFIED MEDIATOR & ARBITRATOR

TELEPHONE: (803) 432-4391
FACSIMILE:   (803) 425-4816

April 22, 2024

**VIA CERTIFIED MAIL; ELECTRONIC MAIL**
Jonathan Zhou
689 Brunswick Street
San Francisco, CA 94112

> Re:   River Financial, Inc. v. Jonathan Zhou
>        JAMS-Demand For Arbitration

Dear Mr. Zhou:

I hope this letter finds you doing well.

Please be advised that this firm represents River Financial, Inc. ("River") in an action against you to recover funds from your Bitcoin purchases from River in February and March 2024. As Bill Mongan, Esquire, informed you on April 9, 2024 in the enclosed correspondence, this was River's last attempt to resolve this matter with you individually before commencing legal proceedings against you.

Pursuant to the enclosed Terms of Service which were provided and available to you during your transaction with River, disputes are to be resolved through arbitration by JAMS in the event you fail to resolve the dispute in good faith. As you know, River Financial has attempted to communicate with you on numerous occasions to resolve this matter to no avail. Accordingly, I am hereby enclosing a demand for arbitration and enclosing a proof of service evincing the same.

If you have any questions or wish to resolve this matter prior to it being submitted to arbitration, please contact me at your earliest convenience. Thank you for your attention to this matter.

Very truly,

Michael D. Wright

Enclosures as Stated



# Stipulation for Arbitration
Arbitrator Identified - Expedited Procedures

---

## ARBITRATION MATTER BETWEEN

**REFERENCE NUMBER**

**CLAIMANT**   River Financial, Inc.

**RESPONDENT**   Jonathan Zhou

## STIPULATION FOR ARBITRATION AND SELECTION OF ARBITRATOR

It is stipulated and agreed by the Parties to submit all disputes, claims or controversies to neutral, binding arbitration at JAMS, pursuant to the JAMS Arbitration Administrative Policies and, unless otherwise agreed in writing by the parties, to the applicable JAMS Arbitration Rules and Procedures. For cases proceeding under the JAMS Comprehensive Rules, the parties agree that the Expedited Procedures set forth in Rules 16.1 and 16.2 shall be employed.

The Parties hereby agree to give up any rights they might possess to have this matter litigated in a court or jury trial.

Parties agree that   **Tamara Lange**   shall serve as Arbitrator in this matter and that no party may have *ex-parte* communications with the Arbitrator. Any necessary communication with the Arbitrator must be initiated through the case manager.

**SIGNATURE**   *Michael D. Wright*   **DATE**   04/22/2024

**NAME (PRINTED)**   Michael D. Wright   **FOR**   River Financial, Inc.

**SIGNATURE**   **DATE**

**NAME (PRINTED)**   **FOR**

**SIGNATURE**   **DATE**

**NAME (PRINTED)**   **FOR**

**SIGNATURE**   **DATE**

**NAME (PRINTED)**   **FOR**

# Stipulation for Arbitration
## Arbitrator Identified - Expedited Procedures

**Completion of this section is <u>required for all consumer or employment claims</u>.**

## CONSUMER AND EMPLOYMENT ARBITRATION

Please indicate if this is a CONSUMER ARBITRATION. For purposes of this designation, and whether this case will be administered in California or elsewhere, JAMS is guided by *California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e)*, as defined below, and the JAMS Consumer and Employment Minimum Standards of Procedural Fairness:

☑ **YES**, this is a CONSUMER ARBITRATION.

☐ **NO**, this **is not** a CONSUMER ARBITRATION.

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below. "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

1. The contract is with a consumer party, as defined in these standards;
2. The contract was drafted by or on behalf of the non-consumer party; and
3. The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:

1. An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;
2. An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;
3. An individual with a medical malpractice claim that is subject to the arbitration agreement; or
4. An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

In addition, JAMS is guided by its Consumer Minimum Standards and Employment Minimum Standards when determining whether a matter is a consumer matter.

**If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT a CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration.**

## EMPLOYMENT MATTERS

**If this is an EMPLOYMENT matter, Claimant must complete the following information:**

Private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

☐ Less than $100,000   ☐ $100,000 to $250,000   ☐ More than $250,000   ☐ Decline to State

## WAIVER OF ARBITRATION FEES

**In certain states (e.g. California), the law provides that consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees.** In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information. Note: this requirement is not applicable in all states.

 **RIVER**

River Financial Inc.
80 E. Rich Street, Ste 600, Columbus, OH 43215
(888) 801-2586 • river.com

*Via Electronic Mail and First-Class Mail*

Apr 9, 2024

To:     Jonathan Zhou
        689 Brunswick Street, San Francisco, CA 94112
        jonathanjzhou676@gmail.com

From: Bill Mongan
      River Financial Inc.
      bill.mongan@river.com

Re:     Your Account Balance

Mr. Zhou,

I write on behalf of River Financial Inc. ("River"), in connection with your recent transactions. As you are aware, we received a notification from your bank indicating that the ACH transactions between you and River in February and March 2024 were unauthorized. **After reviewing your account activity, River believes that these transactions were, in fact, authorized by you.** Among other things, these transactions occurred at the same time—and from the same device—as your submission of your photo ID and your selfie. Plainly, you *were* in control of your account and *you* initiated the transfers of funds from your bank to River. River hereby demands the return of those funds.

By claiming that River was not authorized to debit your bank account, you have misrepresented the nature of this transaction to your bank. Please be advised: Any intentional attempt to obtain money from a financial institution by misrepresenting whether a transaction was authorized may result in the imposition of fines up to $1,000,000, or imprisonment up to 30 years, or both under the provisions of Federal law (18 U.S.C. §1344). River reports this activity to appropriate authorities.

Consistent with Section 11 of the Terms of Service, please consider this letter our attempt to resolve this matter. Please contact me at the email address above to discuss the prompt return of these funds. If we do not hear from you within five days, we will be commencing legal proceedings against you, in which we will pursue all available remedies, including any attorneys' fees. You are directed to avoid destroying any documents that may be relevant to this dispute.

1



River Financial Inc.
80 E. Rich Street, Ste 600, Columbus, OH 43215
(888) 801-2586 • river.com

Regards,

*William Mongan*

Bill Mongan
General Counsel
River Financial Inc.

Log in **Sign up**



# River Financial Terms of Service

Effective Date: Oct 4, 2023

## 1. Introduction

Thank you for using River! These Terms of Service (the "Terms" or "Agreement") govern your rights and obligations relating to your access to and use of the https://river.com website and any other related services, applications, and content provided by us (collectively, the "Services").

BY REGISTERING FOR A USER ACCOUNT OR USING THE SERVICES, YOU HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY THESE TERMS. PLEASE READ THESE TERMS CAREFULLY, AS THEY CONTAIN IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND RESPONSIBILITIES, INCLUDING LIMITATION OF OUR LIABILITY, BINDING ARBITRATION, AND WAIVER OF CLASS ACTION CLAIMS. IF YOU DO NOT ACCEPT THIS AGREEMENT IN ITS ENTIRETY, YOU MAY NOT ACCESS OR USE THE SERVICES.

All references in these Terms to "we," "us," "our," or "River" refer to River Financial Inc., a Delaware corporation, and our affiliated entities, as applicable. The term "you," "your," or "user" refers to any individual or entity that accesses the Services, including any individuals who access the Services on behalf of an entity.

## 2. Changes to these Terms

We reserve the right to change these Terms from time to time, with or without notice to you. If you continue to use the Services, you consent to the new Terms, as modified. Any changes to these Terms will become effective on the "Effective Date" indicated above. If you continue to use the Services after the Effective Date, you consent to the new Terms. We will always have the latest Terms posted on the Services.

## 3. Overview of the Services

requirements described below are able to buy, sell, send, receive, and store Bitcoin.

River is a regulated financial institution. As such, we endeavor to comply with all laws and regulations applicable to our business, including the Bank Secrecy Act ("BSA"), anti-money laundering and terrorism financing ("AML") regulations, and federal and state money transmission licensing requirements of the states and jurisdictions in which we operate.

# 4. Your User Account & Information

### 4.1 You must meet eligibility criteria to use the Services.

To be eligible to use the Services, you must meet the following requirements:

- You must be at least 18 years old.
- You must register for a River user account via the Services (a "User Account") and successfully complete the identity verification process described below.
- You must be a citizen or permanent legal resident of the United States and have a Social Security Number or Taxpayer ID.
- You must reside in a state or jurisdiction in which we operate. To see a list of the states or jurisdictions in which we operate, please visit here.

By signing up for a User Account, you represent and warrant that you are a resident of a state or jurisdiction in which we operate and meet all of the eligibility criteria for the Service.

### 4.2 You must register for a User Account.

Before being able to use the Services to buy, sell, receive or send Bitcoin, you will be required to register for a User Account. You agree to provide accurate, current, and complete information during the registration process and to update such information to keep it up to date. You can only have one River User Account at any time. We reserve the right to suspend or terminate your User Account according to these Terms if we determine that any information provided by you is inaccurate or incomplete. We may, in our sole discretion, refuse to open a User Account, or limit the number of User Accounts that you may hold or suspend or terminate any User Account or the trading of Bitcoin in your account.


Log in

### 4.3 You must safeguard your User Account.

You are responsible for safeguarding your User Account information, including your password. You agree not to disclose your password to, or share your User Account with, any third party. You agree to take sole responsibility for any activities or actions under your User Account, whether or not you have authorized such activities or actions. You will immediately notify us of any unauthorized use of your User Account.

You agree that we will not be liable for any loss or harm that you incur if someone else uses the Services from any of your devices, either with or without your knowledge, and that you will be solely responsible for such use, whether or not you authorized the use.

### 4.4 We will verify your identity.

As a regulated financial institution, we are required to obtain information about and verify the identity of our users. To comply with our BSA/AML obligations, we will request that you provide certain information to us about you. This information will be used by us for the purposes of identity verification and the detection of money laundering, terrorist financing, fraud, or any other financial crimes. You agree that all such information provided by you will be complete and accurate, that you will keep us updated if any of the information you provide changes, and that we may keep a record of such information consistent with our BSA/AML obligations.

In addition to collecting information from you, we are required to take reasonable steps to verify your identity as a user. You expressly authorize River to take any and all actions that we reasonably deem necessary to verify your identity or protect you and/or us against fraud or other financial crime. These may include, but are not limited to, engaging third-party services to assist with such verification efforts, sharing your information with such third parties, and collecting additional information about you from such third parties.

### 4.5 Some cases require Enhanced Due Diligence.

Certain users may be subject to a more rigorous identity verification program ("Enhanced Due Diligence") consistent with our BSA/AML obligations due to the


vendors, to complete the Enhanced Due Diligence. You acknowledge that if we determine, in our sole discretion, that you are unable to satisfy the requirements of our Enhanced Due Diligence, certain functionalities of the Services may not be available to you.

### 4.6 You agree to our Privacy Policy.

The type of information we collect from and about you as you use the Services, as well as how we use, share and retain that information is set forth in our Privacy Policy. By accessing and using the Services, you grant us the right to use, share and retain the information we collect from and about you as described in these Terms and in our Privacy Policy.

### 4.7 You may be subject to the terms of a Referral Program.

We may offer referral programs for inviting others to use the Services or for using the Services following such an invitation (a "Referral Program"). Any incentives offered under any such Referral Program are subject to the then current Referral Program terms and are additionally subject to our sole discretion.

## 5. Buying, Selling, Transferring, And Holding Bitcoin

### 5.1 You may buy and sell Bitcoin for U.S. Dollars.

Subject to the eligibility and verification requirements set forth in these Terms, you may buy or sell Bitcoin in exchange for U.S. Dollars ("USD"). We accept transfers of USD into your User Account via Automated Clearing House ("ACH") transfer or wire transfer. We currently do not support the purchase of Bitcoin through credit card, debit card, or any other means.

### 5.2 We will provide you with a Bitcoin wallet.

Subject to the eligibility and verification requirements set forth in these Terms, we will provide you with a digital wallet to hold Bitcoin (a "Wallet"). You agree and acknowledge that the Wallet only supports Bitcoin, and no other digital currencies. You may not attempt to transfer to or store in your Wallet any other digital currency or any other asset other than Bitcoin. You should verify the details of any Bitcoin


### 5.3 You own your Bitcoin.

River does not own or borrow any Bitcoin in your Wallet. Rather, all Bitcoin in your Wallet are custodial assets held by River on your behalf. All Bitcoin assets are held in full reserve and do not earn interest. You have all rights, title, and interest in and to the Bitcoin held by us for your benefit. You have the power to store, sell, or transfer all such Bitcoin. Except as required by law or as otherwise set forth in these Terms, we do not sell, transfer, or otherwise dispose of your Bitcoin without your consent. As the owner, you alone bear all risk of loss, including loss of value, associated with the Bitcoin in your Wallet.

### 5.4 Bitcoin is not an insured asset.

You understand and acknowledge that Bitcoin is not subject to protections or insurance provided by the Federal Deposit Insurance Corporation, the Securities Investor Protection Corporation, or any other agency or organization. River will have no responsibility or liability to you or anyone else for any loss in the value of Bitcoin held in your Wallet.

### 5.5 You may transfer USD to and from your User Account, and you may hold USD in your User Account.

You may transfer USD to and from your User Account via ACH. If you elect to use ACH transfer in connection with the Services, you must designate and connect a valid U.S. bank account to your User Account. River does not charge a fee for ACH transfers, but is not responsible for any fees charged by your bank.

You may transfer USD to and from your User Account via wire transfer. River charges a fee for wire transfers, which we will communicate to you via the Services. River is not responsible for any fees charged by your bank. In certain circumstances, and at our sole discretion, we may require you to connect a valid U.S. bank account to your User Account to continue your use of the Services. If you elect to use wire transfers in connection with the Services, you should verify all wire information prior to submitting your transaction. River is not responsible for transfers that do not include the correct transfer information. If you have questions, contact our support team at support@river.com.



Log in

and business accounts.

**5.6 You buy Bitcoin from us and sell Bitcoin to us.**

When you place an order to buy Bitcoin through the Services, you are requesting to purchase, directly from River, the quantity of Bitcoin indicated on your purchase order at the then-applicable Bitcoin buy-price listed on the Services and on your purchase order. Subject to the requirements set forth in these Terms and as otherwise communicated by us to you, when your order executes, we will sell you Bitcoin from our reserves, credit such quantity of Bitcoin to your Wallet, and debit your designated bank account for the applicable purchase price. When you place a buy order through the Services, you expressly authorize us to initiate a debit entry to your linked bank account for the amount listed in the order, which shall include our transaction fees and any other fees as set forth in these Terms. You are required to maintain an adequate balance in your bank account to cover the fees associated with any Bitcoin you purchase.

Additionally, for recurring orders, you authorize us to execute purchases on your behalf automatically at the interval of your choosing. You authorize us to initiate a debit entry to your linked bank account to facilitate recurring orders, and you understand that such debits may occur up to one week prior to the scheduled date for your recurring purchase. If you do not have sufficient funds available for your recurring orders, we may make additional attempts to pull funds. You may cancel recurring orders at any time. River may cancel or modify your recurring order for any reason in its sole discretion.

Conversely, when you place an order to sell Bitcoin through the Services, you are requesting to sell, directly to River, the quantity of Bitcoin indicated on your sale order at the then-applicable Bitcoin sell-price listed on the Services and on your purchase order. Subject to the requirements set forth in these Terms and as otherwise communicated by us to you, when your order executes, we will buy such amount of Bitcoin from you, deduct such quantity of Bitcoin from your Wallet, and credit your designated bank account for the applicable sale price.

**5.7 We set the Bitcoin price listed on the Services.**

not be responsible for any differences between the buy-price or sell-price of Bitcoin listed on the Services (a "River Price") and the prices listed on any third-party services.

### 5.8 Your User Account may be subject to certain limitations.

In order to detect money laundering, fraud and other criminal activity, we may impose certain limitations on your User Account and your ability to buy, sell, and transfer Bitcoin. These may include, but are not limited to, the following measures:

- Subject to these Terms, you may purchase Bitcoin after registering a User Account and submitting the required information but before we have verified your identity. However, you may not execute any other transactions, including transferring Bitcoin into and out of your Wallet or selling Bitcoin, until we have verified your identity consistent with these Terms.

- We may impose limits on the amount of Bitcoin you can buy or sell in a given period. Your transaction limits may vary depending on a number of factors, including the verification steps you have completed. To view your transaction limits, you may review this help center article. We reserve the right to change applicable limits as we deem necessary in our sole discretion.

- Any transfer of USD to your User Account will be subject to a settlement period to ensure that the transaction was not fraudulent. During this settlement period, any Bitcoin that you buy with these funds will appear in your "Total Balance," but it will not be reflected in your "Available Balance" (i.e. the amount of Bitcoin that is eligible for withdrawal or transfer). Therefore, you may not be able to withdraw or transfer unsettled USD or Bitcoin during the settlement period.

- We may further limit your ability to withdraw or transfer Bitcoin or USD. We reserve the right to cancel or reverse any transaction, even after funds have been debited from your bank account or Bitcoin has been received by us.

### 5.9 We charge transaction fees.

When you buy or sell Bitcoin using the Services, we charge a transaction fee. Our most updated transaction fees are always listed on the Services. We will also notify you of our fees for any transaction before you execute a buy or sell order, and we will


Please note that our fees are subject to change. We will provide you notice of changes in our fees by posting the changes to the Services or otherwise communicate them to you in writing. Your continued use of the Services after the effective date of such change will constitute your agreement to pay the updated fees.

## 5.10 We will collect third-party fees.

In addition to our fees, we may also charge third-party fees related to the execution of a wire or a Bitcoin transaction. We will calculate such third-party fees at our discretion, although we will always notify you of the fee at or before the time you authorize the transaction. You agree that we may collect such third-party fees by reducing them from your Available Balance.

## 5.11 You are responsible for maintaining adequate funds in your bank account.

If you do not have sufficient funds in your bank account to cover a transaction you initiate through the Services, or in the event of a returned transaction, we may take any action we deem necessary and appropriate, including reversing the transaction, if possible, or withdrawing Bitcoin or USD from your User Account to cover the cost of the transaction and any other fees or losses incurred by us as a result of insufficient funds or any returned transaction.

## 5.12 Bitcoin transactions are not reversible.

Please be advised that Bitcoin transactions are not reversible. As such, once a buy or sell order is completed or is in pending status, it may not be cancelled. Similarly, you should exercise caution when making transfers from and to your Wallet, as such transactions cannot be stopped once initiated.

When you or any third party transfers Bitcoin to your Wallet, you must use a Bitcoin address or Lightning Network invoice associated with your Wallet that is provided to you by us. The transferring party (whether you or a third party) shall be solely responsible for executing the transaction properly. River assumes no responsibility for, and shall not be liable to you or any third party, for any lost Bitcoin or other assets as a result of an incorrect Bitcoin address, Lightning Network invoice, inadequate network/miner fees, an attempt to transfer any digital assets other than Bitcoin to your Wallet, or any other improper transfer instructions.


and shall not be liable to you or any third party for, any Bitcoin in your Wallet once an outbound transfer is initiated pursuant to your instructions.

## 5.13 You are solely responsible for any taxes.

Your purchase and sale of Bitcoin may be subject to certain tax obligations. It is your sole responsibility to determine whether, and to what extent, any taxes apply to any transactions you conduct through the Services, and to withhold, collect, report and remit the correct amounts of taxes to the appropriate tax authorities. Your transaction history is available through your User Account.

River will default the cost basis method to First In First Out (FIFO) unless you select a different method. For withdrawals and sends, unknown lots will be sent first, then known lots. More information on the cost basis methodologies can be found here .

## 5.14 We may be required to report and transfer unclaimed Bitcoin or USD to authorities.

If your User Account is closed or becomes inactive, we may be required to report any remaining Bitcoin or USD in your User Account to the authorities after the passage of applicable waiting periods specified by law. If this occurs, we may attempt to contact you at the email or mailing address we have on file for you. If we are unable to contact you after a reasonable amount of time, we may be required to deliver such Bitcoin or USD to the authorities.

## 5.15 Our obligations in the event of your death.

If you have agreed to a Transfer on Death Authorization and Agreement ("TODAA") and we receive notice of your death, we will attempt to distribute your account to your designated beneficiaries consistent with the terms of your TODAA. These Terms will neither supersede not affect your acceptance of the TODAA. In addition to other requirements set forth in your TODAA, your beneficiary(ies) will be required to agree to the Terms.

If you have not agreed to a TODAA and we have reason to believe that you have died (including if we receive legal documentation of your death), we will suspend your User Account. We may also take steps to investigate, including through third parties, whether you have died. If we reasonably determine that you have died, any Bitcoin or



Log in

she creates a new User Account. We reserve the right, at our sole discretion, to effect the transfer of the value in your User Account to your fiduciary by selling any Bitcoin in your User Account and transferring the USD proceeds to your fiduciary. If you have not designated a fiduciary on your User Account, we may either require an order designating a fiduciary from a court having competent jurisdiction over your estate or otherwise determine a fiduciary entitled to inherit your Bitcoin or USD based on our review of your will, trust, or other legal documentation.

### 5.16 Automatic Withdrawal of your Bitcoin.

When you set up Bitcoin automatic withdrawals, you are requesting to automatically withdraw a portion of or all of your Bitcoin balance (less fees) from a select River account to a Bitcoin address of your choice. You are able to edit or cancel your automatic withdrawals at any time. If you delete your automatic withdrawals, any automatic withdrawal transactions that are pending will continue to execute as they cannot be canceled. If you edit your automatic withdrawals, any automatic withdrawal transactions that are pending will execute according to the updated settings.

The Bitcoin network fees associated with this on-chain Bitcoin transfer will be determined at the time of execution, but will not exceed 3% of your transaction total. When the withdrawal is successfully executed, we will send you a confirmation email with the exact fee deducted from your transaction.

Only settled Bitcoin will be withdrawn; more information regarding the settlement period can be found in section '5.8 Your User Account may be subject to certain limitations.'

You are responsible for ensuring the provided on-chain Bitcoin address is accurate. More information regarding Bitcoin transactions can be found in section '5.12 Bitcoin transactions are not reversible.'

### 5.17 Target Price Orders.

River may permit you to request a target price order (a "Target Price Order"), which allows you to specify a price (the "Target Price") at which you would like to buy or sell bitcoin and the amount that you would like to buy or sell. A Target Price Order will


When you request a Target Price Order, River will restrict the USD (in the case of a buy order) or bitcoin (in the case of a sell order) necessary to complete the Target Price Order, including any applicable fees. If you request to fund your Target Price Order via ACH, you authorize River to withdraw funds from your bank account in the amount sufficient to cover your requested Target Price Order and any applicable fees, and to restrict those funds upon receipt.

River cannot guarantee that the Target Price you select will ever be reached. In the event that the Target Price matches the River Price (a "Target Event"), as determined in our sole discretion, you authorize River to place a buy order or sell order as specified by you in the Target Price Order. You may cancel a Target Price Order at any time prior to a Target Event. A Target Price Order may be canceled by River at any time and for any reason, with no liability to you for any losses incurred as a result of such cancelation. Once a Target Price Order is canceled, any USD or bitcoin that has been restricted in connection with the Target Price Order will once again be available for transactions.

All Target Price Orders are requested at your own risk. Disruptions to the Services, including rapidly shifting prices or third-party outages, may impact River's ability to execute a Target Price Order and may result in the cancelation of your Target Price Order. We are not liable to you in the event that a Target Price Order is not able to be completed upon a Target Event as a result of any such disruptions.

### 5.18 Sending Bitcoin via River Link.

You may be able to send Bitcoin from your Wallet by sending a third party (the "River Link Recipient") a link that they may use to claim Bitcoin (a "River Link"). Any Bitcoin that you attempt to transfer via River Link will be reserved in your account until the funds are claimed by a River Link Recipient, or until the transfer is canceled. A River Link Recipient can claim the Bitcoin associated with a River Link into their own River account or by providing River with a Bitcoin address or a Lightning Network invoice. Bitcoin transactions initiated by you or by your River Link Recipient are subject to the Terms. If the Bitcoin associated with a River Link is not claimed within thirty (30) days of the creation of the River Link, the River Link will be automatically canceled and the associated Bitcoin will be made available in your User Account.



Log in

You further agree that we will not be liable for any loss or harm that you incur related to any River Link. You may cancel a River Link at any time prior to the redemption of Bitcoin from the River Link by a River Link Recipient.

## 6. Our Intellectual Property Rights

The Services contain important and proprietary property owned by us, including software, that constitutes our trademarks, trade secrets and other intellectual property. Nothing in these Terms shall be construed as a conveyance of any ownership right or title in or to our property. We only grant you a limited, nonexclusive, non-transferable, non-sublicensable, and revocable license to use the Services for the purposes permitted by these Terms, and only for as long as you are permitted to access the Services.

The Services, including any images, illustrations, posts, audio clips, photographs, editorial content, notices, software (including html-based computer programs), and other content related to the Services, are the property of River and its affiliates, or are the property of a third party who has granted River permission to use such material, and in any case are protected from unauthorized copying and dissemination by copyrights that are owned or licensed by River and by copyright law, trademark law, international conventions and other intellectual property laws. All logos or product names are trademarks or registered trademarks of their respective owners. You may not reproduce, perform, create derivative works from, republish, upload, post, transmit, distribute, decompile, reverse-engineer, disassemble, or otherwise convert in any way whatsoever any materials from the Services without our prior written permission. Nothing contained on these Terms should be construed as granting, by implication, estoppel, or otherwise, any license or right to use the Services or any information displayed on the Services except: (a) as expressly permitted by these Terms or (b) with the prior written permission of River or such third party that may own the trademark or copyright of information displayed on the Services.

## 7. Services Beyond Our Control

River is not responsible for, makes no guarantees about, and assumes no liability for, any services beyond our reasonable control. These may include, but are not limited to, the following:



Log in

Services.

- Any third-party websites and businesses that are referenced in the Services. You acknowledge and agree that we are not responsible for the accuracy, content, or functionality of the services or information provided on or by such third-party websites or businesses. Nothing on the Services shall be considered an endorsement, representation, or warranty of anything contained in such third-party communications, including all products or services advertised therein, if any.

- The underlying software protocols that governs the operation of Bitcoin. You acknowledge that River has no control over the Bitcoin protocol and cannot guarantee its functionality; that the Bitcoin subject to forks and other changes to the underlying protocol that may impact the value and functionality of the Bitcoin in your Wallet; and that you understand all of the risks associated with holding Bitcoin as an asset. In the event of any fork in the Bitcoin protocol, River may take any action it deems necessary, in its sole discretion, in connection with such fork. You understand that, as a result, River may choose to disregard any forked assets and that you may not be entitled to receive such assets.

## 8. Restrictions on your use of the Services

### 8.1 You may only use the Services for its intended purpose.

You represent and warrant that your use of the Services does not and will not conflict with any pre-existing obligation in conflict or in any way inconsistent with the provisions of these Terms. You may only use the Services for its intended purpose, and not for any other purpose. Any non-permitted use of the Services, as determined in our sole discretion, shall be grounds for immediate termination of these Terms and immediate termination of your use of, and access to, the Services. You are only entitled to access and use our Services for lawful purposes.

### 8.2 You may not engage in prohibited conduct.

You covenant and represent that you will not use the Services to engage in, or aid or abet in, the violation of any law, statute, ordinance, or regulation. These include, without limitation, violation of any sanctions programs administered in any jurisdiction in which we operate (such as the U.S. Department of Treasury's Office of Foreign



Log in

- Intellectual property or proprietary rights infringement : sales, distribution, or access to counterfeit music, movies, software, or other licensed materials without the appropriate authorization from the rights holder; any product or service that directly infringes or facilitates infringement upon the trademark, patent, copyright, trade secrets, or proprietary or privacy rights of any third party;

- Counterfeit or unauthorized goods : sale of counterfeit goods; unauthorized sale or resale of brand name or designer products or services; sale of goods or services that are illegally imported or exported;

- Gambling or games of skill : lotteries; bidding fee auctions; sports forecasting or odds making for a monetary or material prize; fantasy sports leagues with cash prizes; internet gaming; contests; sweepstakes; games of chance including legal or illegal forms of gambling, internet gambling, sweepstakes and contests with a buy-in or cash prize; charity sweepstakes and raffles for the explicit purpose of fundraising;

- Soliciting, selling or offering for sale regulated or illegal products or services : cannabis dispensaries and related businesses; sale of tobacco, e-cigarettes, and e-liquid; online pharmacies; prescription-only products including card-not-present pharmaceuticals; peptides and research chemicals; fake references or identification services; age-restricted goods or services; weapons and munitions; gunpowder and other explosives; fireworks and related goods; toxic, flammable, and radioactive materials; products and services with varying legal status on a state-by-state basis; goods or services, the sale of which is illegal under applicable law in the jurisdictions to which your business is targeted or directed;

- Adult content and services : pornography and other obscene materials depicting nudity or explicitly sexual acts; sites offering any sexually-related services such as prostitution, escorts, pay-per view, adult live chat features; adult toys; adult video stores and sexually oriented massage parlors; gentleman's clubs, topless bars, and strip clubs; sexually oriented dating services;

- Unfair, predatory or deceptive practices : investment opportunities or other services that promise high rewards; sale or resale of a service without added benefit to the buyer; resale of government offerings without authorization or added value; sites that we determine in our sole discretion to be unfair, deceptive, or predatory towards consumers; platforms that facilitate the publication and removal of content (such as



owed to third parties, factoring, or other activities intended to obfuscate the origin of funds; payment facilitation;

- <u>Drugs and drug paraphernalia</u> : sale of narcotics, controlled substances, and any equipment designed for making or using drugs, such as bongs, vaporizers, and hookahs;

- <u>Multi-level marketing</u> : pyramid schemes and multi-level marketing;

- <u>Pseudo pharmaceuticals</u> : nutraceuticals, pseudo-pharmaceuticals and other products that make health claims that have not been approved or verified by the Food and Drug Administration (or equivalent applicable local and/or national regulatory body); or

- <u>High risk businesses</u> : any other businesses that we believe poses elevated financial risk, legal liability, or violates the policies of our banking partners.

In addition to the above, you may not engage in any of the following activities on the Services:

- Violating the rights, including intellectual property rights, of others;

- Activities that could be harmful to minors;

- Harassment of others;

- Transmission of "junk mail" or unsolicited mass mailing or "spam" or harvesting;

- Abusive, threatening, obscene, defamatory or libelous conduct;

- Soliciting passwords or personally identifiable information for unlawful purposes from other users of the Services;

- Using any robot, spider, other automatic device, or manual process to monitor, copy, or "scrape" web pages or the content contained in the Services or for any other unauthorized purpose without our prior written consent;

- Using any device, software, or routine to interfere with, or attempt to interfere with, the proper working of the Services;

- Decompiling, reverse engineering, or disassembling the software underlying the Services or attempting to do so; or

- Taking any action that imposes an unreasonable or disproportionately large load on

Log in

You may not use the Services to engage in any of the following activities or businesses without our prior written consent, which we may withhold in our absolute discretion:

- Money and legal services: financial institutions, money transmitters and money services businesses (including, without limitation, selling or offering gift cards, prepaid cards, in-game currency unless the merchant is the operator of the virtual world), digital currency transmitters, check cashing, wire transfers, money orders; currency exchanges or dealers; bill-pay services; crowdfunding; insurance; bail bonds; collections agencies; law firms collecting funds for any purpose other than to pay fees owed to the firm for services provided by the firm (e.g., firms cannot use the Services to hold client funds, collection or settlement amounts, disputed funds, etc.);

- Investment & credit services: securities brokers; mortgage consulting or debt reduction services; credit counseling or repair; investment services; real estate opportunities; lending instruments;

- Charitable organizations: Accepting donations or otherwise operating a charitable nonprofit organization (including a religious organization); or

- Gaming: Operating games that are not defined as gambling by law, but which require an entry fee and award a prize.

## 9. Termination

### 9.1 We may terminate your access to the Services.

We reserve the right to take action to limit or prevent your access to our Services if we, in our sole discretion, determine that limiting or preventing your access to our Services is necessary or advisable. Circumstances in which we may limit or prevent your access to our Services include, but are not limited to, if we deem that such action is necessary based on: (i) your use of the Services in a way that is unlawful or would potentially expose us to liability; (ii) disruption of the Services by you to others; (iii) your violation of these Terms or our Privacy Policy; (iv) your violation of any applicable laws, rules, regulations, and agreements that may apply to you; and (v) your use of the Services in a way that could cause harm to any person or entity. Such action may include, without limitation, reversing any transaction, suspending your User Account, or terminating your access to the Services altogether.



Log in

contact us at support@river.com to deactivate your User Account. We may request certain information and/or documentation to verify your request to deactivate your User Account. Upon any termination of this Agreement, whether by you or by us, you must discontinue any further use of the Services. Once deactivated, you may request to re-activate your User Account. We reserve the right, in our sole discretion, to determine whether to re-activate your User Account. Please note that even if you terminate your User Account, we may retain information about you consistent with our BSA/AML obligations and our Privacy Policy.

### 9.3 Certain parts of these Terms will continue after termination.

Notwithstanding any termination of these Terms, any provision of these Terms that by its nature and context is intended to survive its termination will so survive. These include, without limitation, provisions related to limitation of our liability, disclaimer of warranties, our intellectual property rights, indemnity and dispute resolution.

## 10. LIMITATION OF LIABILITY; DISCLAIMERS; INDEMNIFICATION

### 10.1 River does not provide investment or other advice.

RIVER DOES NOT PROVIDE ANY INVESTMENT, FINANCIAL, TAX, LEGAL OR OTHER PROFESSIONAL ADVICE. NO FEATURES, TOOLS, OR INFORMATION AVAILABLE THROUGH THE SERVICES SHOULD BE CONSTRUED AS ADVICE. WE ENCOURAGE YOU TO CONSULT WITH THE APPROPRIATE FINANCIAL AND TAX ADVISORS TO UNDERSTAND THE IMPLICATIONS OF BUYING, SELLING AND HOLDING BITCOIN. YOU UNDERSTAND THAT BUYING, SELLING AND HOLDING BITCOIN CARRIES RISK. YOU AGREE TO USE THE SERVICES TO HOLD AND TRANSACT IN BITCOIN AT YOUR SOLE RISK.

### 10.2 You assume the risk of using the Services.

RIVER MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED (SEE BELOW), AS TO THE CONTENT OR OPERATION OF THE SERVICES OR OF THE SERVICES. YOU EXPRESSLY AGREE THAT YOUR USE OF THE SERVICES IS AT YOUR SOLE RISK.


Log in

EXTENT PERMITTED BY LAW, WE EXPRESSLY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE SERVICES, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT. YOU ASSUME THE RISK OF ANY AND ALL DAMAGE OR LOSS FROM THE USE OF, OR INABILITY TO USE, THE SERVICES. WE DO NOT WARRANT THAT THE OPERATION OF THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE. RIVER MAKES NO REPRESENTATION, WARRANTY OR GUARANTEE THAT THE CONTENT THAT MAY BE AVAILABLE THROUGH THE SERVICES IS FREE OF INFECTION FROM ANY VIRUSES OR OTHER CODE OR COMPUTER PROGRAMMING ROUTINES THAT CONTAIN CONTAMINATING OR DESTRUCTIVE PROPERTIES OR THAT ARE INTENDED TO DAMAGE, SURREPTITIOUSLY INTERCEPT OR EXPROPRIATE ANY SYSTEM, DATA OR PERSONAL INFORMATION.

**10.4 Our liability to you is limited.**

TO THE MAXIMUM EXTENT PERMITTED BY LAW, WE SHALL NOT BE LIABLE FOR DAMAGES OF ANY KIND (INCLUDING, BUT NOT LIMITED TO, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, LOST PROFITS, OR LOST DATA, REGARDLESS OF THE FORESEEABILITY OF THOSE DAMAGES) ARISING OUT OF OR IN CONNECTION WITH YOUR USE OF THE SERVICES INCLUDING, BUT NOT LIMITED TO, DAMAGES ARISING FROM OR RELATED TO ANY OF THE FOLLOWING: ANY HARM OR DAMAGE CAUSED BY, OR OTHERWISE RELATED TO, YOUR RELIANCE ON INFORMATION PROVIDED THROUGH THE SERVICES; ANY LOSS OR UNAUTHORIZED DISCLOSURE OF DATA; ANY HARM OR DAMAGE CAUSED BY, OR OTHERWISE RELATED TO, YOUR USE OF OR INTERACTION WITH ANY SERVICES OFFERED THROUGH THE SERVICES; AND ANY VIOLATIONS OF APPLICABLE LAWS, RULES, REGULATIONS, AND OTHER AGREEMENTS. THIS LIMITATION SHALL APPLY REGARDLESS OF THE LEGAL THEORY OR FORM OF ACTION.

IN NO EVENT WILL OUR AGGREGATE LIABILITY ARISING OUT OF OR IN CONNECTION WITH THESE TERMS AND YOUR USE OF THE SERVICES EXCEED THE GREATER OF ONE HUNDRED DOLLARS ($100.00) AND THE FEES


THE LIMITATIONS OF DAMAGES SET FORTH ABOVE ARE FUNDAMENTAL ELEMENTS OF THE BASIS OF THE BARGAIN BETWEEN YOU AND US. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR CERTAIN TYPES OF DAMAGES OR CAUSES OF ACTION, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

### 10.5 You agree to indemnify us.

In the event that any third party brings a claim against us related to your use of the Services or the use of your User Account (a "Claim"), you agree to indemnify, defend, and hold us and our agents harmless from and against any and all third party claims, losses, liabilities, damages, and/or costs (including reasonable attorneys' fees and costs) relating to such Claim. We will notify you promptly of any such Claim and will provide you with reasonable assistance, at your expense, in defending any such Claim; provided, however, that our failure to so notify you shall not relieve you of your indemnity obligations with respect to such Claim, but instead shall reduce those obligations by the amount of damages or increased costs and expenses attributable to our failure to give notice. We reserve the right to approve counsel retained by you, to take control of the defense (at our expense), and to participate in the defense of any Claim (at our expense) for which indemnity is required. You may not settle any Claim without our prior consent.

## 11. Resolving Disputes

### 11.1 Contact us if you have any questions or concerns.

If you have any questions, concerns or complaints about the Services, your User Account, these Terms, or anything else, please contact our support team at support@river.com. We may ask you certain information about you and your User Account to respond to your inquiry.

### 11.2 You must follow our internal complaint process.

If our support team is unable to resolve your complaint, you must send us a complaint. Please include a description of your complaint, the resolution you are seeking, and any other relevant information. If you do not follow the formal complaint

Log in



Once you've initiated a complaint, we will investigate your claim. This may include reviewing the information you've provided and the information available to us. In certain cases, we may need to contact you to obtain additional information. Upon conclusion of the investigation, we will send you an email notice indicating whether we approve or reject the resolution you are seeking. If we deem appropriate, we may also offer to resolve your complaint through an alternative solution. We will aim to resolve your complaint within 15 business days of the date you submit your complaint. However, if we are unable to do so, we will inform you in writing and specify the deadline by which we will make a determination, which will not be more than 35 business days from the date you submitted your complaint.

**11.3 You and River agree to arbitrate any disputes.**

If we are unable to resolve your complaint through the process described above, you agree to resolve any dispute, claim, or controversy with River arising out of or relating to your use of the Services, regardless of the legal theory, in the following manner. First, we both agree to attempt in good faith to resolve the dispute through mediation administered by JAMS, which shall take place in San Francisco, California, and the costs of which shall be divided equally between you and River. Second, if the dispute is not resolved through informal resolution and mediation, we both agree to participate in binding arbitration administered by JAMS, which shall take place in San Francisco, California.

Either you or we may bring a lawsuit solely for injunctive relief without first engaging in the dispute resolution process described above.

We both agree that, in the event of arbitration, or in the event of a lawsuit as permitted by this Section or otherwise, the prevailing party shall be entitled to costs and fees (including reasonable attorneys' fees). Arbitration pursuant to this Section shall be confidential, and neither you, nor River, nor the arbitrator may disclose the existence, content or results of any arbitration, except as may be required by law or for purposes of enforcement or appeal of the arbitration award. Judgment on any arbitration award may be entered in any court having proper jurisdiction.

**11.4 You waive the right to class action and jury trial.**

Log in



PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (INCLUDING, BUT NOT LIMITED TO, AS A PRIVATE ATTORNEY GENERAL).

YOU AND RIVER EACH HEREBY IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

If any portion of this arbitration agreement is determined by a court to be inapplicable or invalid, then the remainder shall still be given full force and effect. Nothing contained in this Section shall limit our ability to take action related to your access to the Services as provided in these Terms.

### 11.5 Delaware law will govern these Terms.

These Terms shall be governed by the laws of the State of Delaware, without regard to conflict of law provisions.

### 11.6 We agree to resolve disputes in San Francisco, California.

In the event that a lawsuit is filed where permitted under the provisions above, or in the event that the provisions above are found not to apply to you or to a given dispute, we both agree that any judicial proceeding will be brought in the federal or state courts located in San Francisco, California. Both you and we consent to venue and personal jurisdiction there.

## 12. Electronic Signature and Delivery of Communications

By agreeing to these Terms, you consent to receiving all communications, agreements, disclosures, and notices related to your use of the Services electronically. These may include, but are not limited to, your consent to these Terms, any updates to these Terms and our Privacy Policy, details and notices about your User Account and transactions, and any other disclosures and notices. We will communicate all electronic disclosures to you by posting them on the River website or via email at the address associated with your User Account, and are deemed received as of the time and date sent by River.


version 31.0 and above, or Safari 7.0 and above). You may retain documents in paper form by printing them using a printer, or electronically by saving them to a hard drive or cloud storage with sufficient space.

You agree to keep your email address updated at all times. You may update your contact information by logging into your User Account and updating the information in your account settings page.

If you wish to withdraw your consent to receiving electronic disclosures, you must contact us at support@river.com, in which case we may deactivate your User Account and terminate your access to the Services, as described above. If we choose to provide communications to you by mail, we may charge you additional fees.

## 13. Geographical Notices

### 13.1 Use outside of the United States.

River makes no claim that the Services are appropriate or may be used outside of the United States. If you access the Services from outside of the United States, you do so at your own risk and are responsible for compliance with the laws of your jurisdiction.

## 14. How to Contact Us

If you have any questions about these Terms or our Services, please feel free to contact us by email at support@river.com.

## 15. Miscellaneous

### 15.1 Severability

If, for whatever reason, any term or condition in these Terms is found unenforceable, all other terms and conditions will remain unaffected and in full force and effect.

### 15.2 Waiver

The failure to enforce any provision of these Terms is not a waiver of our right to do so later, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party.



assigns. These Terms may be assigned by us without restriction. These Terms may not be assigned or otherwise transferred by you without our prior written consent.

## 15.4 Headings

The section headings contained in these Terms are for reference purposes only and shall not affect the meaning or interpretation of these Terms in any way.



NMLS ID#1906809
© 2024 River Financial Inc. All rights reserved.





| Product | Company | Support | Social |
|---|---|---|---|
| Sign Up | About | Help Center | Twitter |
| Buy Bitcoin | Careers | Contact | LinkedIn |
| Zero-Fees | Newsroom | Support | GitHub |
| River Link | Areas of | Site Status | |
| Security | Availability | | |
| Bitcoin Price | | | |
| Private Client | | | |
| Business | | | |
| Bitcoin | | | |
| Inheritance | | | |
| Mining | | | |



Log in

Markets

Bitcoin Storage

Bitcoin Mining

Bitcoin Taxes

Blockchain
Technology

Bitcoin News

Bitcoin
Glossary

Bitcoin?

Why Does
Bitcoin Have
Value?

How to Buy
Bitcoin

Company

Announcements

Newsletter

Privacy Policy

Terms of
Service

## PROOF OF SERVICE BY CERTIFIED U.S. MAIL,

Re: River Financial, Inc. v. Jonathan Zhou

I, Michael D. Wright, hereby declare that on April 22, 2024 I served the attached DEMAND FOR ARBITRATION on the parties in the within action by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, Camden, South Carolina addressed as follows:

Jonathan Zhou
689 Brunswick Street
San Francisco, CA 94112

I declare under penalty of perjury the foregoing to be true and correct. Executed at Camden, South Carolina, on April 22, 2024

_____
Michael D. Wright

# Exhibit 4

# JAMS ARBITRATION
## Case No. 51000002093

RIVER FINANCIAL, INC.,
a Delaware corporation,

     Claimant,

 vs.

JONATHAN ZHOU, an individual,

     Respondent.

_____/

## PRE-HEARING ORDER NO. 1

   Pursuant to written notice, an initial arbitration management conference was held telephonically in this matter on Thursday, September 5, 2024, at 11:00 a.m.  Michael D. Wright, Esq., of Savage Royall & Sheheen LLP, appeared on behalf of Claimant. Respondent Jonathan Zhou did not appear.

   Good cause appearing, the following orders are made respecting the conduct of this arbitration:

1. <u>Parties and Counsel</u>. The parties to this arbitration are identified in the above caption and are represented as follows:

  For Claimant:

    Michael D. Wright, Esq.
    Savage Royall & Sheheen LLP
    1111 Church Street
    Camden, SC 29020
    (803) 432-4391
    mwright@the savagefirm.com

For Respondent:

>Jonathan Zhou
>689 Brunswick Street
>San Francisco, CA 94112
>Jonathanjzhou676@gmail.com

2.    Arbitrator.  The undersigned was appointed as the sole arbitrator:

>Hon. Robert A. Baines (Ret.)
>JAMS
>160 W. Santa Clara Street, Suite 1600
>San Jose, CA 95113
>(408) 288-2240          (408) 295-5267 (fax)
>rbaines@jamsadr.com

3.    Arbitrator's Case Manager:

>Cynthia Victory, ADR Consultant
>JAMS
>160 W. Santa Clara Street, Suite 1600
>San Jose, CA 95113
>(408) 346-0736          (408) 295-5267 (fax)
>cvictory@jamsadr.com

4.    Agreement to Arbitrate:

The parties' agreement to arbitrate is contained in Section 11.3 of their River Financial Terms of Service ("Agreement").

5.    Commencement of Arbitration:

JAMS received Claimant's Demand for Arbitration on or about May 8, 2024.  Thereafter the arbitration was formally commenced.  The undersigned was appointed as the Arbitrator, and the JAMS "Appointment of Arbitrator" letter sent to all parties on or about June 28, 2024.  The undersigned's written disclosures were sent to all parties on or about that same date.

6.    Applicable Law and Rules:

Substantive Law: Pursuant to the Section 11.5 of the Agreement, Delaware substantive law will be applied in this matter.

Procedural Rules: The JAMS Streamlined Arbitration Rules & Procedures ("Rules") will be applied, as will be the JAMS Minimum Standards of Procedural Fairness for Consumer Arbitrations.

7.      <u>Claims/Responses</u>:

Claimant's claim is described in its Demand for Arbitration.  The claim is for breach of the Agreement by Respondent in making an improper ACH chargeback of his purchase of Bitcoin from Claimant, resulting in Claimant's loss of $190,000.00.  Respondent has not filed a response; however, the claim is deemed denied pursuant to Rule 7(e).

8.      <u>Discovery</u>:

The parties will be entitled to the discovery provided for in the JAMS Streamlined Arbitration Rules, supplemented by any additional discovery agreed to by the parties or ordered by the undersigned following a hearing.

Additionally, the parties are ordered to complete the initial informal exchange of information, as described in Rule 13(a), by no later than **Friday, September 20, 2024**.

9.      <u>Arbitration Hearing</u>:

This matter is hereby set for a remote arbitration hearing on the JAMS-approved Zoom platform on **Friday, October 18, 2024, at 11:00 a.m., Pacific Time.**   The log-in information for the hearing will be circulated in advance.

If any party wishes to submit evidence by way of affidavit, that evidence is to be exchanged between the parties, and the arbitrator, at least seven (7) days in advance of the hearing.

10.     <u>Miscellaneous</u>:

Counsel and parties are requested to familiarize themselves with the fees and cancellation policy for this arbitration.   Any questions should be directed to the Arbitrator's Case Manager.

The parties are to the use JAMS Access for electronic filing and service of documents and other communications in this matter.

This Order shall continue in effect unless and until amended by subsequent order of the Arbitrator.

DATED:  September 5, 2024.

  /s/ *Robert A. Baines*              .
Hon. Robert A. Baines
Judge of the Superior Court (Ret.)
Arbitrator

**PRE-HEARING ORDER NO. 1**

# Exhibit 5

# JAMS ARBITRATION
## Case No. 51000002093

RIVER FINANCIAL, INC.,
a Delaware corporation,

                         Claimant,

 vs.

JONATHAN ZHOU, an individual[1],

                         Respondent.

_____/

## **FINAL AWARD**

---

[1] Mr. Zhou's date of birth is January 24, 2000.

THE UNDERSIGNED, having been duly appointed as the Arbitrator in this matter, and having examined the submissions, proofs, and allegations of the parties, finds, concludes, and issues this Final Award, disposing of all matters presented herein, as follows:

## I.  INTRODUCTION AND PROCEDURAL BACKGROUND

A.    Parties and Counsel. The parties to this arbitration are identified in the above caption and were represented as follows:

For Claimant:

> Michael D. Wright, Esq.
> Savage Royall & Sheheen LLP
> 1111 Church Street
> Camden, SC 29020
> (803) 432-4391
> mwright@the savagefirm.com

For Respondent:

> Jonathan Zhou
> 689 Brunswick Street
> San Francisco, CA 94112
> Jonathanjzhou676@gmail.com

B.    Arbitrator.  The undersigned was appointed as the sole arbitrator:

> Hon. Robert A. Baines (Ret.)
> JAMS
> 160 W. Santa Clara Street, Suite 1600
> San Jose, CA 95113
> (408) 288-2240          (408) 295-5267 (fax)
> rbaines@jamsadr.com

C.    Arbitrator's Case Manager:

> Cynthia Victory, ADR Consultant
> JAMS
> 160 W. Santa Clara Street, Suite 1600
> San Jose, CA 95113
> (408) 346-0736          (408) 295-5267 (fax)
> cvictory@jamsadr.com

D.   <u>Agreement to Arbitrate</u>:

   The parties' agreement to arbitrate is contained in Section 11.3 of their
   River Financial Terms of Service ("Agreement").

E.   <u>Commencement of Arbitration</u>:

   JAMS received Claimant's Demand for Arbitration on or about May 8,
   2024.  Thereafter the arbitration was formally commenced.  The under-
   signed was appointed as the Arbitrator, and the JAMS "Appointment of
   Arbitrator" letter sent to all parties on or about June 28, 2024.  The under-
   signed's written disclosures were sent to all parties on or about that same
   date.

F.   <u>Applicable Law and Rules</u>:

   <u>Substantive Law</u>: Pursuant to the Section 11.5 of the Agreement,
   Delaware substantive law was applied in this matter.

   <u>Procedural Rules</u>: The JAMS Streamlined Arbitration Rules &
   Procedures ("Rules") were applied, as were the JAMS Minimum
   Standards of Procedural Fairness for Consumer Arbitrations.

G.   <u>Claims/Responses</u>:

   Claimant's claim is described in its Demand for Arbitration.  The
   claim is for breach of the Agreement by Respondent initiating
   fraudulent ACH chargebacks of his purchases of Bitcoin from Claimant,
   resulting in Claimant's loss of $190,000.00.  Respondent did not file a
   response; however, the claim was deemed denied pursuant to Rule 7(e).

H.   <u>Arbitration Hearing</u>:

   Because Respondent did not participate in the initial arbitration
   management conference and did not engage in the exchange of
   information required by Pre-Hearing Order No. 1, the undersigned
   reasonably concluded that it was unlikely that the Respondent would
   attend the arbitration hearing.  As such, the hearing was conducted
   remotely using the JAMS-approved Zoom online platform.

   All parties were given over thirty (30) days written notice of the date
   and time for the arbitration hearing and the Zoom log-in information.  The
   hearing proceeded as scheduled, on Friday, October 18, beginning at
   11:00 a.m. (Pacific Time).

   Claimant was represented at the hearing by General Counsel Bill
   Mongan, Esq., and outside counsel Michael D. Wright, Esq., of Savage

Royall & Sheheen LLP.  The Respondent did not appear for, or otherwise participate in, the hearing.

Although the Respondent did not appear, or submit any evidence, the undersigned nonetheless required Claimant to establish a prima facie case for its claim.  [Rule 17(j).]

One witness, Joseph Bryan, Director of Finance for River Financial, Inc., appeared and supplied evidence by way of an affidavit, with attached exhibits.   The affidavit and the exhibits were admitted into evidence.  The hearing concluded and the matter was submitted for decision on October 18, 2024.

The proceedings were not reported.

## II.  FACTS

Claimant's evidence established, by a preponderance, that on or about February 2, 2024, Respondent Jonathan Zhou ("Zhou") (d.o.b. 1-24-2000) and Claimant River Financial, Inc. ("River Financial"), entered into an agreement known as the River Financial Terms of Service ("Agreement") under which Zhou established an account to buy and sell Bitcoins.   Pursuant to that Agreement, in February and March of 2024, Zhou made purchases of Bitcoin from River Financial.  In making those Bitcoin purchases, Respondent Zhou used funds transferred from his Capital One Bank account.

After making those purchases, and after receiving the Bitcoins from Claimant, Respondent Zhou falsely represented to Capital One Bank that he was not the person who authorized the funds transfers used to make the Bitcoin purchases.  As a result of Zhou's false representations, Capital One Bank reversed the payments that Zhou had made to River Financial.  Accordingly, River Financial has received nothing for the Bitcoins that it sold to, and delivered to, Zhou.

The evidence established that River Bank, pursuant to the agreement, had delivered to Zhou Bitcoins worth $190,000.00, but that, as a result of Zhou's fraudulent actions, has received nothing for the $190,000.00 worth of Bitcoins.

After making demand for payment for the Bitcoins delivered to Zhou, Claimant filed its Demand for Arbitration in this matter.   Respondent Zhou has not tendered any defense to Claimant's claim, or otherwise offered any evidence as to why he is not liable for the value of the Bitcoins he ordered, and received, from Claimant.

### III.  CONCLUSIONS

Based on the uncontroverted evidence, it is found that Respondent Jonathan Zhou breached the parties' Agreement by not paying for the Bitcoins he ordered and received from Claimant River Financial, and that Claimant River Financial has been damaged by that breach in the amount of $190,000.00.

### IV.  FINAL AWARD

Based on the above findings and conclusions, a Final Award is hereby entered in favor of RIVER FINANCIAL, INC., a Delaware corporation, and against JONATHAN ZHOU, an individual, in the amount of **$190,000.00**.

As this arbitration has conducted pursuant to the JAMS Minimum Standards of Procedural Fairness for Consumer cases, each side is to bear its own fees and costs incurred herein.

This Final Award resolves all issues submitted for decision in this proceeding.

DATED:  October 18, 2024.

/s/ *Robert A. Baines*

Hon. Robert A. Baines
Judge of the Superior Court (Ret.)
Arbitrator

# CIVIL COVER SHEET

This civil cover sheet does not replace or supplement the filing and service of pleadings or other papers. The information on this form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket. Instructions are on the reverse of this form.

## I. PLAINTIFF(S)

County of Residence of First Listed Plaintiff:
*Leave blank in cases where United States is plaintiff.*

Attorney or Pro Se Litigant Information *(Firm Name, Address, and Telephone Number)*

## DEFENDANT(S)

County of Residence of First Listed Defendant:
*Use ONLY in cases where United States is plaintiff.*

Defendant's Attorney's Name and Contact Information *(if known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| 1  U.S. Government Plaintiff | 3  Federal Question *(U.S. Government Not a Party)* |
| 2  U.S. Government Defendant | 4  Diversity |

## III. CAUSE OF ACTION

Cite the U.S. Statute under which you are filing: *(Use jurisdictional statutes only for diversity)*

Brief description of case:

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 710 Fair Labor Standards Act | 820 Copyrights | 430 Banks and Banking |
| | 340 Marine | | 720 Labor/Management Relations | 830 Patent | 450 Commerce |
| 151 Medicare Act | 345 Marine Product Liability | **PERSONAL PROPERTY** | 740 Railway Labor Act | 835 Patent–Abbreviated New Drug Application | 460 Deportation |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 350 Motor Vehicle | 370 Other Fraud | 751 Family and Medical Leave Act | 840 Trademark | 470 Racketeer Influenced & Corrupt Organizations |
| | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 790 Other Labor Litigation | 880 Defend Trade Secrets Act of 2016 | 480 Consumer Credit |
| 153 Recovery of Overpayment of Veteran's Benefits | 360 Other Personal Injury | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | | 485 Telephone Consumer Protection Act |
| | 362 Personal Injury -Medical Malpractice | 385 Property Damage Product Liability | | **SOCIAL SECURITY** | 490 Cable/Sat TV |
| 160 Stockholders' Suits | | | **IMMIGRATION** | 861 HIA (1395ff) | 850 Securities/Commodities/ Exchange |
| 190 Other Contract | | | | 862 Black Lung (923) | |
| 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 462 Naturalization Application | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 196 Franchise | 440 Other Civil Rights | **HABEAS CORPUS** | 465 Other Immigration Actions | 864 SSID Title XVI | 891 Agricultural Acts |
| **REAL PROPERTY** | 441 Voting | 463 Alien Detainee | | 865 RSI (405(g)) | 893 Environmental Matters |
| 210 Land Condemnation | 442 Employment | 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 220 Foreclosure | 443 Housing/ Accommodations | 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 230 Rent Lease & Ejectment | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | 871 IRS–Third Party 26 U.S.C. § 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 240 Torts to Land | 446 Amer. w/Disabilities–Other | **OTHER** | | | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | 448 Education | 540 Mandamus & Other | | | |
| 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

Original Proceeding    Removed from State Court    Remanded from Appellate Court    Reinstated or Reopened    Transferred from Another District    Multidistrict Litigation–Transfer

Multidistrict Litigation–Direct File

## VI. FOR DIVERSITY CASES ONLY: CITIZENSHIP OF PRINCIPAL PARTIES
*(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

**Plaintiff   Defendant**

Citizen of California

Citizen of Another State

Citizen or Subject of a Foreign Country

Incorporated or Principal Place of Business In California

Incorporated and Principal Place of Business In Another State

Foreign Nation

## VII. REQUESTED IN COMPLAINT

Check if the complaint contains a **jury demand.**

Check if the complaint contains a **monetary demand.** Amount: $

Check if the complaint seeks **class action** status under Fed. R. Civ. P. 23.

Check if the complaint seeks a **nationwide injunction** or Administrative Procedure Act vacatur.

## VIII. RELATED CASE(S) OR MDL CASE
*Provide case name(s), number(s), and presiding judge(s).*

## IX. DIVISIONAL ASSIGNMENT pursuant to Civil Local Rule 3-2
*(Place an "X" in One Box Only)*    **SAN FRANCISCO/OAKLAND      SAN JOSE      EUREKA-MCKINLEYVILLE**

**DATE**                    **SIGNATURE OF ATTORNEY OR PRO SE LITIGANT**

# COMPLETING THE CIVIL COVER SHEET

Complete the form as follows:

I. **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.

   **Attorney/Pro Se Litigant Information.** Enter the firm name, address, telephone number, and email for attorney of record or pro se litigant. If there are several individuals, list them on an attachment.

II. **Jurisdiction.** Under Federal Rule of Civil Procedure 8(a), pleadings must establish the basis of jurisdiction. If multiple bases for jurisdiction apply, prioritize them in the order listed:

   (1) *United States plaintiff.* Jurisdiction based on 28 U.S.C. §§ 1345 and 1348 for suits filed by the United States, its agencies or officers.

   (2) *United States defendant.* Applies when the United States, its agencies, or officers are defendants.

   (3) *Federal question.* Select this option when jurisdiction is based on 28 U.S.C. § 1331 for cases involving the U.S. Constitution, its amendments, federal laws, or treaties (but use choices 1 or 2 if the United States is a party).

   (4) *Diversity of citizenship.* Select this option when jurisdiction is based on 28 U.S.C. § 1332 for cases between citizens of different states and complete Section VI to specify the parties' citizenship. Note: Federal question jurisdiction takes precedence over diversity jurisdiction.

III. **Cause of Action.** Enter the statute directly related to the cause of action and give a brief description of the cause. Do not cite jurisdictional statutes unless jurisdiction is based on diversity. Example: U.S. Civil Statute: 47 U.S.C. § 553. Brief Description: Unauthorized reception of cable service.

IV. **Nature of Suit.** Check one of the boxes. If the case fits more than one nature of suit, select the most definitive or predominant.

V. **Origin.** Check one of the boxes:

   (1) *Original Proceedings.* Cases originating in the United States district courts.

   (2) *Removed from State Court.* Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C. § 1441. When the petition for removal is granted, check this box.

   (3) *Remanded from Appellate Court.* Check this box for cases remanded to the district court for further action, using the date of remand as the filing date.

   (4) *Reinstated or Reopened.* Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

   (5) *Transferred from Another District.* Check this box for cases transferred under Title 28 U.S.C. § 1404(a). Do not use this for within-district transfers or multidistrict litigation (MDL) transfers.

   (6) *Multidistrict Litigation Transfer.* Check this box when a multidistrict (MDL) case is transferred into the district under authority of Title 28 U.S.C. § 1407.

   (7) *Multidistrict Litigation Direct File.* Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

VI. **Residence (citizenship) of Principal Parties.** Mark for each principal party *only* if jurisdiction is based on diversity of citizenship.

VII. **Requested in Complaint.**

   (1) *Jury demand.* Check this box if plaintiff's complaint demanded a jury trial.

   (2) *Monetary demand.* For cases demanding monetary relief, check this box and enter the actual dollar amount being demanded.

   (3) *Class action.* Check this box if plaintiff is filing a class action under Federal Rule of Civil Procedure 23.

   (4) *Nationwide injunction.* Check this box if plaintiff is seeking a nationwide injunction or nationwide vacatur pursuant to the Administrative Procedures Act.

VIII. **Related Cases.** If there are related pending case(s), provide the case name(s) and number(s) and the name(s) of the presiding judge(s). If a short-form MDL complaint is being filed, furnish the MDL case name and number.

IX. **Divisional Assignment.** Identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated." Note that case assignment is made without regard for division in the following case types: Property Rights (Patent, Trademark and Copyright), Prisoner Petitions, Securities Class Actions, Anti-Trust, Bankruptcy, Social Security, and Tax.